TEXAS & PACIFIC RAILWAY COMPANY v. JOHN HOHN.

No. 10.

1. **Allegation and Proof—Variance.**—The petition alleged, that while ascending a ladder on the side of one of the cars of a moving train, appellee (a brakeman) was struck by a piece of timber which projected too near the road for safety of employes, from a tank standing near the road; and the tank was alleged to be negligently constructed and an obstruction to the road. The proof showed that the beam which struck appellee and caused the injury projected from a temporary staging erected around the tank, which was being repaired, and that the scaffold was nearer to the track than the tank. *Held*, not a material variance.

2. **Improper Charge.**—It being shown that it was necessary in the discharge of his duties for a brakeman to ascend a ladder on the outside of a box car of a moving train, and the other facts being as indicated above, the following charge was properly refused: "If the timbers that struck plaintiff were the timbers of a temporary scaffolding erected by the employes of defendant in order to build or repair the tank, and no part of the permanent structure injured plaintiff, then the jury should find for the defendant."

3. **Unobstructed Track.**—It is the duty of the railway company to its employes to exercise reasonable care to keep its track clear of obstructions, and to discover and within reasonable time remove them when dangerous to employes, however they may have come there, whether by the act of a servant or a stranger.

4. **Negligence of Company.**—It would be culpable negligence to allow a beam of timber to project to within a few inches of passing trains after the company had discovered its presence, or by the use of proper care ought to have done so.

5. **Repair of Track.**—A railway company must repair its track, and is not guilty of negligence if there are imperfections in the track resulting necessarily from the process of repairing.

6. **Negligence of Servants.**—If the negligent act of the servant at once injures a fellow servant, he can not recover; but when the negligent act of the servant consisted in rendering dangerous the track, which it was the company's duty to use ordinary care to keep free from obstructions, and it failed to discover and remove them within a reasonable time, then the negligence of the servant becomes that of the master; and it might be a question whether such negligence would not from the first be charged to the master.

7. **Question for Jury.**—The question whether or not the dangerous timber should have been discovered and removed by the appellant before appellee was hurt was properly left to the jury.

8. **Foreseen Dangers.**—It being the custom and duty of brakemen to ascend ladders of cars while the train was in motion, the appellant was bound to foresee that a timber so close to passing trains would endanger the lives of its employes, and must accept the proximate consequences of its negligence in leaving it there.

9. **Contributory Negligence.**—The brakeman having been for several days off duty, and having no opportunity of learning the condition of the tank and attachments before he was hurt, and being in the discharge of his duty, was not guilty of contributory negligence in ascending the ladder near the tank.

10. **Verdict not Excessive.**—A verdict of $15,000 for a broken skull, crushed hip, injured spine, deranged urinal organs, and severe suffering phys-

ical and mental, and such internal injuries as in the opinion of his physician must soon end in death, of a brakeman who had been earning $65 per month, *held* not excessive.

APPEAL from Gregg. Tried below before Hon. FELIX J. McCORD. The opinion states the case.

*F. A. Prendergast*, for appellant.—1. The court erred in refusing special charge No. 1, asked by the defendant, to the effect that plaintiff could not recover if he was knocked from the car by the temporary staging placed around the water tank for the purpose of repairing it, because those erecting said staging were fellow servants with plaintiff, and he can not recover for their negligence. Railway v. Oram, 49 Texas, 345; Railway v. Somers, 71 Texas, 701; 78 Texas, 441; Beach on Con. Neg., sec. 134; Railway v. Welch, 72 Texas, 298; Bish. Non-Cont. Law, secs. 649, 665.

One person may be vice principal as to some duties and acts and a fellow servant as to others. Railway v. Smith, 76 Texas, 616; Railway v. Welch, 72 Texas, 301; Bish. Non-Cont. Law, sec. 664.

2. The court erred in not granting a new trial, because the verdict is not supported by the evidence, in this, the evidence showed that it was a plank of a temporary scaffolding at the water tank that struck plaintiff, and no part of the water tank struck him. Davis v. Railway, 28 Am. and Eng. Ry. Cases, 448; Clark v. Railway, 18 Am. and Eng. Ry. Cases, 84.

*R. C. De Graffenreid* and *Blanton & Blanton*, for appellee.—1. The men who were engaged in the building of the tank or in repairing the same were in the performance of a duty which the appellant owed to his servants, and were therefore appellant's agents and not fellow servants with appellee, John Hohn. Railway v. Smith, 76 Texas, 611; Railway v. Farmer, 73 Texas, 85; Railway v. Williams, 75 Texas, 4; Bonner v. La None, 80 Texas, 119; Railway v. Oram, 49 Texas, 345; Railway v. Denham, 49 Texas, 181; 23 Am. and Eng. Ry. Cases, 390; 26 Id., 331; Railway v. Herbert, 116 U. S., 652; 24 Am. and Eng. Ry. Cases, 410.

2. The verdict is abundantly supported by the evidence, wherefore the court properly overruled the motion for a new trial. 70 Texas, 553; 62 Texas, 349; 57 Texas, 153; 66 Texas, 151; 57 Texas, 113; 49 Texas, 181; Railway v. Brazil, 72 and 78 Texas; Railway v. Thompson, 30 Am. and Eng. Ry. Cases, 541; Hobson v. Railway, 28 Am. and Eng. Ry. Cases, 360; Singleton v. Railway, 21 Am. and Eng. Ry. Cases, 226; Railway v. Peyton, 18 Am. and Eng. Ry. Cases, 1; Railway v. Roddy, 31 Am. and Eng. Ry. Cases, 340; Pullman Car Co. v. Bluhm, 18 Am. and Eng. Ry. Cases, 87; Railway v. Holland, 30 Am. and Eng. Ry.

Cases, 590; Railway v. McDaniel, 11 U. S., 158; Railway v. Bourne, 32 Am. and Eng. Ry. Cases, 227; Railway v. McLin, 8 Am. and Eng. Ry. Cases, 237; Railway v. Sheehy, 32 Am. and Eng. Ry. Cases, 233; Railway v. Woodruff, 33 Am. and Eng. Ry. Cases, 169; Railway v. Ware, 27 Am. and Eng. Railway Cases, 206; Railway v: Spicker, 23 Am. and Eng. Ry. Cases, 672; Railway v. Collam, 5 Am. and Eng. Ry. Cases, 554.

3. All the other assignments of error may be discussed under two heads: (1) Was the defendant negligent in having the structures so near the track that a person climbing on the side of a box car of a passing train would be knocked off? (2) Was the plaintiff negligent in climbing on the side of a box car when the train was in motion away from a station? Davis v. Railway, 28 Am. and Eng. Ry. Cases, 448; Clark v. Railway, 18 Am. and Eng. Ry. Cases, 84; Holden v. Railway, 129 Mass., 268; Schaub v. Railway, 16 S. W. Rep., 92–97; 17 Am. and Eng. Ry. Cases, 548, 559; 18 Id., 85.

WILLIAMS, Associate Justice.—This is an appeal from a judgment for $15,000, recovered by appellee against appellant, in the District Court of Gregg County, for personal injuries sustained by appellee while in the service of appellant in the capacity of brakeman.

As no question arises on the pleadings except that appellant claims there was a variance between the allegation and the proof as to the manner in which appellee received his injury, it is unnecessary to state them, except so far as they relate to that question.

The petition on this point alleged in substance, that while ascending a ladder on the side of one of the cars of a moving train, appellee was struck by a beam or piece of timber which projected too near the road for safety of employes, from a tank standing near the road, which was a part and appendage of the road. It was alleged that the tank was negligently constructed, and that it was an obstruction to the track, which rendered it unsafe and dangerous to employes whose business it was to be on the outside of the trains.

The facts which we find to be established are: That a tank had formerly stood where the injury occurred, but had been blown down and disused for some time; that two or three weeks before appellee was injured workmen were put to repairing and rebuilding it; that in the process of repairing they had to erect temporary staging around it, which was somewhat nearer the track than was the tank; that the evidence does not show that either the tank or the main body of the scaffold was too near the track, but does establish the fact that a piece of timber projected from the scaffolding to within a few inches (not more than eight) of passing trains. This timber was put there by the employes working upon the tank, and was shown to have been there on the day before the appellee was hurt. It was not necessary for it to project out as it did from the

scaffolding, and it was dangerous to brakemen whose duties required them to be on the outside of cars and to ascend ladders along their sides while trains were in motion.

Appellee, at Mesquite, got off the train to uncouple a car which was to be left on the siding and recouple the engine to the train. When he had done this he was near the engine of a long train, which began to move off. Seeing that if he waited until the caboose, which was his station when he was not required to be outside the cars, reached him, that the train would be going too fast for him to mount it, he climbed upon a flat car which was passing him, and walked back along the tops of the cars towards the caboose. He reached a stock car, called an Atchison, Topeka & Santa Fe car, which was taller than the others, and had no ladder at its end, but had one at its south side near the end. He got upon this ladder and began to ascend it, and as he approached the top he saw the timber projecting from the tank. He threw his head towards the car, but was struck by the timber and knocked to the ground. The evidence shows that brakemen are required to perform duties which necessitate their being on the outside of cars, and this act of appellant in mounting the train in motion and going back to the caboose along the tops of the cars was customary under such circumstances. Appellant had not seen the tank since the work of repairing began. He had been off the road for about ten days before he was hurt, and passed over it going west the day before for the first time after the rebuilding commenced. His position on the train was then such as to prevent him from seeing the tank, and he did not in fact see it. The tank was about one-half mile east of the siding at Mesquite. Prior to his injury appellee was making from $65 to $70 per month. His injuries were serious; his skull broken, his hip knocked in and crushed, his spine seriously impaired, his urinary organs seriously and permanently deranged. His strength has been so depleted that he has to walk with crutch or stick, and he can walk but a short distance without stopping to rest. From the time of his injuries up to this time he has undergone great suffering, both physical and mental. His sleep is but partial, and his rest at night very imperfect. He is now unfit for any kind of business, and has to take medicine all the time, and his condition does not improve thereby. He is a constant sufferer of most acute pain. His digestion is so enfeebled and his appetite so impoverished that he is greatly reduced in flesh and strength, with greatly impaired disposition to sleep. His internal injuries are of such a character as to cause great pain, and medical skill and remedies are alike unavailing to give relief, and his doctor stated that his injuries will continue through life, and that in the meantime the appellee will undergo sufferings as heretofore, and that it is only a matter of very little time when death will result from them.

Appellant's first assignment of error complains of the refusal of a special charge, that if "the timbers that struck plaintiff were the timbers of a temporary scaffolding, erected by the employes of defendant in order to build or repair the tank, and no part of the permanent structure injured plaintiff," then the jury would find for the defendant, "because the negligence of the employes who constructed the temporary scaffolding was the negligence of those persons who were fellow servants with plaintiff, and he can not recover for their negligence."

The second assignment is, that the court erred in not granting a new trial, because the verdict is not supported by the evidence; in this, the evidence showed that it was a plank of a temporary scaffolding at the water tank that struck plaintiff, and no part of the water tank struck him.

The proposition involved in the special charge is, that the mere fact that the timber which struck appellee was part of a temporary structure erected for the purpose of repairing the tank would defeat appellee's action.

Appellant owed duties to its employes, not only in the construction or repair of the tank, but also in the keeping of its track cleared of dangerous obstructions. Reasonable care was required of the company to see that this was done. It had the right to repair its tank, but this in nowise modified or conflicted with its duty with reference to the track. It was still its duty to discover, and within reasonable time remove, any obstruction of the track dangerous to the employes, however it may have come there, whether by the act of a servant, or by that of a stranger, or by accident.

The charge requested required the jury to find for appellant, though the projecting timber which struck appellee may have been in nowise necessary to the work that was being done, and though it may have been left there so long before the injury that the company could with due care have discovered and had it removed.

Whether the negligence of which the workmen were guilty in putting the timber so near the track was originally imputable to the company or not (as a failure to observe its duty to furnish to its servants a reasonably safe place at which to work), it is clear to our minds that it would be culpable negligence in the company to allow so dangerous a contrivance to remain in such position after it had discovered its presence, or ought by the exercise of proper care to have done so. There was evidence, as above stated, which made it proper for the court to submit this question to the jury, and its refusal to give the special charge, the effect of which would have been to withdraw the issue from them, was correct.

Appellant's counsel in his argument contends that there is a difference between permanent structures along a railroad and such temporary ones as are put up in the process of repairing; and that negligence in the

construction or position of the former would be that of the railway company, while negligence in the arrangement of the temporary structure would be that of the servant performing the work, and that none of his fellow servants injured by it could hold the master liable. In support of this he cites a passage in Bishop's Non-Contract Law, as follows: "Where a railroad bridge was in process of repairs, and by reason of it a train stopped at an unusual place on the bridge, and a brakeman fell through it, the road was held not to be liable, and plainly in such a case the temporary imperfections incident to a repair are not within the general rule."

As we understand the proposition, it means no more than that a railway company must repair its track and is not guilty of negligence if there are imperfections in it which result necessarily from the process of repairing. The case referred to by Mr. Bishop is Koontz v. Railway, 65 Iowa, 224, and in that case it is said that the master must in making repairs exercise ordinary care, and it is held that the facts of that case did not show negligence on the part of the railway company. Armour v. Hahn, 111 United States, 318, also referred to by the appellant's counsel, is a case in which one of several workmen engaged in building a house stepped upon a stick of timber projecting from an unfinished brick wall, fell, and was hurt. The timber had been left in that condition by fellow servants of the plaintiff and was placed as was usual in such cases. The gist of that decision is contained in one sentence of Justice Gray's opinion: "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as toward them, of keeping a building which they are employed in erecting in a safe condition at every moment of their work, so far as the safety depends upon the due performance of that work by them and their fellows." He further says: "If it (the timber) was at the time insecure, it was either by reason of the risk ordinarily incident to the state of things in the unfinished condition of the building or else by reason of some negligence of a fellow servant."

The cases of Davis v. Railway, 28 American and English Railway Cases, 448, and Clark v. Railway, Id., 84, are clearly in conflict with decisions of our Supreme Court (Oram v. Railway, 49 Texas, 345; Bonner v. La None, 80 Texas, 119), and the doctrine of the latter case is condemned by standard elementary writers. Bish. Non-Con. Law, sec. 649; Beach on Con. Neg., sec. 134. The first case holds that a brakeman knocked from the ladder of a freight car while in motion by a tank too close to the track can not recover; and the latter holds that a servant struck by the timbers of a bridge too low to allow him to pass safely on the top of the cars has no remedy, because he assumed the risk.

It is to be remarked, however, that the right to recover in such cases

depends upon other facts besides the defective construction of the bridge or tank, as in the case of Railway v. Wallace, 76 Texas, 637.

The other authorities referred to are all cases in which the injury resulted from negligence of fellow servants and from no failure of duty on the part of the master. Schaub v. Railway, 16 S. W. Rep., 92; Holden v. Railway, 129 Mass., 268. They are all clearly distinguishable from this case. Had the workmen engaged in repairing the tank done a negligent act which at once injured appellee without rendering the track unsafe, certainly appellee could not hold appellant liable therefor, because the negligence would have been that of a fellow servant. But when the negligent act of the servant consisted in rendering dangerous the track, which it was appellant's duty to use ordinary care to keep clear of obstructions, it might be a question whether such negligence would not from the first be charged to the master. However that may be, a failure to discover and remove a dangerous object overhanging or projecting near to the track within reasonable time would be negligence on the part of the master, as well where such condition was the result of the acts of servants as if it resulted from any other cause.

The facts showed that the timber was there on the day before the injury, when the same train passed going west, and reached so close to the engine that the engineer removed his screen to save it from ruin. In view of the well known fact that the railroad companies find it necessary to make frequent and oft-repeated inspections of their road, and the opportunities thus afforded for discovering such dangers as this was, we think that the question was properly left to the jury to determine whether or not this should have been discovered and removed by appellant before appellee was hurt.

Appellant's counsel insists that in repairing the tank appellant was bound only to provide against such mishaps as could be apprehended by use of ordinary foresight, and that it could not have anticipated that appellee, at that point, would be ascending a ladder on the south side of a car as it passed the tank.

The evidence showed that the brakemen had to be on top of the cars, and at times to ascend and descend the ladders while the cars were in motion, and that it was customary for them to do so when situated as was appellee. This made it obligatory upon appellant to know that a timber as close to the track as this would endanger the lives of its employes when thus engaged, and it is bound to accept the proximate consequences of its negligence in leaving it there. The injury to appellee was such a consequence. If appellant was not bound to foresee that this timber at this tank would hurt appellee, it was not bound to anticipate that such a timber at any other point of the road would hurt any other servant.

The jury having found negligence, we think that the evidence is sufficient to warrant the finding.

There is no material variance between the allegation and proof as to the manner in and means by which appellee was hurt.

The third assignment is, that the evidence did not show that the tank was too near the track, and a new trial should therefore have been granted. The evidence did show that the beam was too close to the track, and that this was the cause of the injury.

Appellant contends that appellee was guilty of contributory negligence in climbing upon the car as he did, and in not having seen the timber at the tank. We think that the evidence sufficiently showed that appellee acted as was usual, and as brakemen were expected to act in such situations; and that he had no opportunity of learning the condition of the tank and the attachments before he was hurt.

The fifth assignment is, that the damages awarded by the jury are excessive. While the amount is large, appellee's injuries are extraordinary. His pitiable plight was stated in great detail by himself and his attending physician. No witnesses contradicted them, and their testimony establishes an extent of injury and severity of suffering rarely seen. We do not think the verdict so large as to require that we set it aside.

No complaint is made of the charge of the court nor of the evidence, except in the points already considered; and no error in the judgment being made to appear, it is affirmed.

*Affirmed.*

Delivered October 18, 1892.