ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V. MRS. DELLA HOLT ET AL.

Decided July 1, 1909.

**1.—Master and Servant—Negligence—Contributory Negligence—Assumed Risk.**

A ·locomotive fireman, engaged in switching cars on the side tracks of a railway, was killed by collision of his engine with cars so left by a previous switching crew upon an adjoining siding as not to clear the track upon which he was working. Evidence in such case considered and held not to authorize a peremptory instruction to find for defendant, being sufficient to support findings of negligence in so leaving the car and of the absence of contributory negligence and assumption of the risk on the part of the employe so killed.

**2.—Negligence—Anticipating Danger.**

A locomotive fireman being required to perform duties preventing him from keeping a lookout for obstructions upon the track at all times, the act of other employes in leaving a car upon an adjoining siding so situated as not to clear his engine upon the track on which it was engaged in switching, was one which a jury might properly hold to be neglect of a duty owing to him in such employment, being such that an ordinarily prudent person might have foreseen liability of injury to him therefrom though he was performing his duties with ordinary care.

**3.—Negligence—Lookout by Engineer.**

Evidence considered and held sufficient to support the submission to the jury of the issue of negligence on the part of a locomotive engineer in failing to keep a proper lookout against obstructions to the track by cars upon an adjoining siding so situated as not to clear his engine, by collision with which his fireman was killed.

**4.—Negligence—Duty to Injured Party—Charge.**

Evidence considered and held to present no issue as to whether the negligence shown was an omission of a duty owing to the employe injured thereby, and instructions held not erroneous for failing to discriminate between the duty owing to such injured party and that to others. St. Louis S. W. Ry. Co. of Texas v. Pope, 98 Texas, 540, distinguished.

**5.—Charge.**

An instruction directing a verdict for defendant if the jury should find certain facts, held not liable to be understood as a direction to find for plaintiff in any other event.

**6.—Requested Instruction—Applying Law to Facts.**

A requested charge grouping the facts upon a certain issue and instructing as to the law applicable thereto held properly refused because sufficiently covered by the charge given.

**7.—Damages—Death.**

A recovery of damages in the sum of $10,000 in favor of the widow, children and mother, sustained as not excessive in case of death by defendant's negligence of a locomotive fireman, twenty-nine years of age, having a life expectancy of thirty-six years, and earning from $50.00 to $75.00 per month.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*E. B. Perkins, Daniel Upthegrove* and *Marsh & McIlwaine,* for appellant.

*Johnson & Edwards,* for appellee.

WILLSON, Chief Justice.—In appellant's switching yards in Tyler its main-line track ran east and west. Running parallel with said main-line track and crossing Spring Street appellant maintained three other tracks, the first one known as the "house track," the second as "No. 4" and the other as "No. 5." By switches the house track connected directly with the main track, and by similar means No. 5 connected directly with the house track. No. 4 was a spur-track. By a switch situated west of Spring Street it connected with No. 5. February 4, 1908, appellant's switching crew left on track No. 5, west of Spring Street and east of the switch connecting it with No. 4, it seems, box cars so placed as to obstruct the passage of a locomotive going over the switch east of No. 4. One of appellant's locomotives operated by one of its engineers, with Henry Holt as fireman, after backing west on the main-line track, returned east, taking track No. 4, where it "sideswiped" or collided with the box cars so left on No. 5. As a result of the collision, the side of the cab of the locomotive was so crushed inward and against Holt, then in the cab, as to inflict upon him injuries which caused his death. On the ground that appellant's switching crew was negligent in so placing and leaving the box cars, and on the further ground that its engineer operating the locomotive on which Holt was performing service as a fireman was negligent in failing to discover the position of the box cars and take such steps as were necessary to avoid the collision, appellees, the widow, children and mother of Holt, recovered the judgment for $10,-000, from which this appeal is prosecuted.

*After stating the case.*—In refusing to instruct the jury to return a verdict in appellant's favor we think the trial court did not err.

It was appellant's duty to use ordinary care to keep its track in a condition reasonably safe for Holt while engaged in the discharge of his duties. Texas & P. Ry. Co. v. Hohn, 1 Texas Civ. App., 36, 21 S. W., 942; Henry v. Railway Co., 19 S. W., 240. Kirk, a member of appellant's switching crew, charged with the duty of placing the box cars, testified: "Track No. 4 is connected with No. 5 on the west side of the road or street crossing, where Spring Street crosses them. The cars . . . were between Spring Street and the switch-stand for that connection. At the time they were left there (about an hour before the accident occurred) I was standing at the street crossing and I observed the situation in which they were left. I could see that they did not clear track No. 4. I mean by that that they were not far enough away from the switch-stand that cars passing on the other track would have plenty of room to go by, but would strike these cars there. If a car is set far enough away from the switch-stand, there is

no danger of a car passing along the other track striking it. If it is not placed far enough away, cars passing along the other track will strike it, or 'sideswipe' it. . . . W. A. Graham was the foreman of that switch engine, and a man named Buckingham and myself were the switchmen. As well as I remember Graham was standing on the old house track, south of me, on the Spring Street crossing, about fifty or sixty feet from me. . . . Buckingham was up about the engine. He cut the cars off from the engine. I suppose it was the duty of one of us just about as much as the other to judge whether or not the cars were left where they would be in the clear. The foreman has charge of the work, but it is as much the duty of one switchman as of the other to see that the cars are left in the right place." The testimony quoted was not contradicted by any other testimony in the record of this appeal. It shows that the cars were knowingly left by appellant's employes charged with the duty to properly place them, in a position where they would obstruct the passage of locomotives · on track 4. That reasonable men might have concluded that so placing and leaving the cars was negligence on the part of the switching crew we think is clear, notwithstanding the further testimony of Kirk that it was Holt's duty as fireman to keep a lookout and see that the cars were so placed as not to obstruct said track. For it was shown that as fireman Holt was charged with the performance of other duties as well, and that while engaged in the performance of such other duties he might be able to keep such a lookout as would enable him to know of the existence of the obstruction in time to prevent the collision. As reasonable men, the jury might have believed that an ordinarily prudent person charged with the duty of so placing the cars as not to obstruct the track would have foreseen that a fireman on a locomotive on track 4 might not, because engaged in the discharge of duties preventing him from keeping a lookout, have discovered the obstruction in time to have averted the collision.

It was the duty of the engineer operating the locomotive to use ordinary care to discover that track 4 was not obstructed by the cars on track 5, and to so operate his engine as to avoid the collision which occurred. The witness Perry testified that he was going north on Spring Street; that just before he reached the main-line track the locomotive backed west thereon; that the engineer was then in his place in the cab; that the locomotive came back headed east and took track 4, and that the engineer was still in his proper place in the cab. Kirk testified: "Anybody going in on track number 4 could see they would 'sideswipe' the cars on track number 5. . . . If I had been intending to go into that track I would have seen that I would hit the cars on track 5 and I would have avoided doing so. It is the duty of the engineer and fireman to keep a lookout. It is as much their business as it is the switchman's business to see whether cars will be 'sideswiped' or are in the clear." The engineer did not testify, and the testimony of Perry and Kirk as specified was without contradiction. It seems to us to be sufficient to support a finding that the engineer either was negligent in failing to discover that the cars were in a position to obstruct his locomotive, or, if he discovered their position, was

negligent in failing to so operate his locomotive as to avert the collision.

Holt assumed ordinary risks incidental to his employment. He also assumed extraordinary risks of which he knew or of which he should have known. He did not assume risks of which he had no knowledge, due to a failure on the part of appellant to exercise reasonable care for his safety. As before stated, we think the evidence was sufficient to support a finding that it was due to appellant's negligence that the cars were left at a place on track 5 where they would obstruct the passage of the locomotive on track 4. The verdict of the jury involves such a finding, and therefore, in considering the contention made that the evidence showed that Holt assumed the risk of the collision, it is only necessary to determine whether the evidence was sufficient to support a finding that Holt did not know, and was excusable for not knowing, that the cars had been so placed as to obstruct the locomotive when moving on track 4. Kirk testified that it was as much the fireman's "business as it was the switchman's business to see whether cars will be 'sideswiped' or are in the clear.. . . . I guess the fireman could have seen that he would strike them (the cars) if he was looking out." If it appeared from the evidence that Holt saw the cars and appreciated the fact that they were so placed as to obstruct the passage of the locomotive, in time to have taken steps to have averted the collision, and that he did not take such steps; or if it appeared that he did not see the cars, and yet was not excusable for failing to see them, appellant's contention would have force. But it does not so appear. There is no evidence whatever in the record from which an inference fairly could be drawn that he saw the cars. On the contrary, the evidence tended to show that he did not see them. Perry did not see Holt as the locomotive moved west on the main-line track, nor did he see him as it came back east, notwithstanding he was then on the fireman's side of the cab. Perry testified: "I did not see him (Holt). He was not in the fireman's place or I would have seen him. If he had been in his place on the left-hand side of the engine I would have seen him. I say that he was not in the fireman's side." It appearing, as we think it does from the testimony, that Holt did not see the cars, the question is, were the jury justified in finding that Holt was excusable for not discovering the position of same? Appellant argues that the testimony indicates that it was the custom of switchmen to leave cars on sidings in such positions as to obstruct other tracks, and that Holt knew of the custom. We have been unable to find any testimony in the record showing the existence of such a custom. It was shown, however, that in addition to his duty to keep a lookout ahead it was the fireman's duty to keep fire in the engine by shoveling coal from the tender; to keep the boiler supplied with water by means of an injector operated on some engines by means of a lever situated twelve or eighteen inches above the floor of the cab, and on others by means of a lever having a handle on the inside of the cab and even with a window thereof; and when not prevented by his other duties from doing so, to ring the bell of the engine as it approached a road crossing. Perry testified that if the bell of the engine was ringing as it approached from the west he did not hear

it. So it may be said the testimony in the record tends to show that Holt was not engaged in discharging either his duty to keep a lookout for obstructions on the track or his duty to ring the bell for the crossing, but instead was engaged in discharging another or other of the duties resting upon him, and for that reason did not discover the position of the cars. Whether he therefore was excusable or not for failing to see the cars, we think, was for the jury to say.

It follows from what we have said that we are of opinion it would have been error had the trial court, as it was requested by appellant to do, instructed the jury to return a verdict in its favor. The first, second and third assignments of error therefore are overruled, as are the fourth and fifth, complaining of the action of the court in submitting to the jury, as an issue to be determined by them, a question as to whether the engineer was guilty of negligence or not in failing to use due care to discover the position of the cars and so operate his engine as to avert the collision.

The trial court instructed the jury as follows: "If you shall find that some of defendant's employes other than deceased left a car on the switch track designated by the witnesses as number 5, so near to switch track No. 4 that it would not clear and would collide with an engine which was going in upon said track No. 4, and if you find that an ordinarily prudent and cautious person would not, under the same or similar circumstances, have so left said car, if you find it was so left, and if you further find that an engine, upon which the deceased was, attempted to go in upon said track No. 4, and that, as the direct and proximate result of the car having been left 'not in the clear,' on track No. 5, the engine ran against said car and mashed in the cab, thereby inflicting injuries upon deceased from which he died, then, unless you find that he was guilty of contributory negligence hereinafter explained, you will find for the plaintiffs." Kirk having testified that it was as much the fireman's duty as it was the switchman's "to see whether cars will be 'sideswiped,' or are in the clear," it is insisted that the instruction was erroneous because it authorized the jury, if they believed that an ordinarily prudent person, having in mind the safety of Holt and others charged as he was with the duty to keep a lookout for such obstructions, would have left the cars in the position they occupied, nevertheless to find for appellees if they believed such a person, having in mind the safety of persons not charged as Holt was with a duty to keep such a lookout, would not have left the cars in such a position. In other words, the contention is that to leave the cars obstructing track 4 might be negligence as to other persons to whom appellant owed a duty, and yet not be negligence as to Holt; and that the charge authorized a verdict against appellant without reference to such a distinction. In support of the contention we are cited to St. Louis S. W. Ry. Co. v. Pope, 98 Texas, 540, as a case in point. There the railway company in violation of its rules had left unblocked and uncoupled on a siding, not on a grade, certain cars. While walking on top of the cars, in the act of stepping from one of them to another, while they were moving, Pope was injured as a result of the cars separating. The court charged the jury as follows: "If you find from a preponderance of the evidence that it was not

reasonably safe to leave cars standing together uncoupled on the side-track in Mount Pleasant in question, then if you further find that the car from which plaintiff fell was uncoupled with, although standing together with the car immediately south of same, then if you further find that an ordinarily prudent person would not have left the cars uncoupled under similar circumstances, then if you further find that plaintiff, while exercising ordinary care, was injured as the direct result of said cars being left uncoupled, then you will find for plaintiff, unless you find plaintiff assumed the risk of same being uncoupled, as explained under the eighth division of this charge, or was guilty of contributory negligence as explained in subdivision 8a of this charge." "The issue presented by the charge," said the Supreme Court, "is that if the condition of the cars was not 'reasonably safe,' whether the danger was to the plaintiff or to some one else, and that the plaintiff was injured by reason of that condition of the cars, then he had a right to recover." The evidence showed that cars left uncoupled and unblocked on the sidetrack were liable to move to and upon the main track, thereby rendering it "unsafe both for the cars and for persons engaged in operating trains upon the main line." "It is apparent from the charge taken in connection with the evidence," the Supreme Court further said, "that the jury might have concluded that the condition of the cars was unsafe as to others than the plaintiff, and yet, under the terms of the charge, they could have found their verdict against the defendant. . . . If all the facts grouped in the charge be true, they do not show that the railroad company owed to plaintiff the duty of coupling the cars on the side track, therefore would not support the verdict." Accepting, as we must, the ruling in the Pope case as the law, we do not regard it as supporting the contention made in this case. As we understand the record, danger only to Holt and others engaged as he was in assisting in operating appellant's engines and cars on track 4 reasonably could be foreseen as likely to follow as a result of leaving the cars in the position they occupied on track 5. In the Pope case the evidence suggested dangers to others than those engaged like Pope was, as reasonably to be apprehended from leaving the cars unblocked and uncoupled on the inclined sidetrack, and the charge there complained of was so framed as to lead the jury to believe that they should find the company guilty of negligence if they thought a reasonably prudent person, having in mind the company's duty to such other persons, would not have left the cars uncoupled and unblocked, without respect to whether they believed the company was negligent in the discharge of the duty it owed to Pope or not. The charge here complained of, considered with reference to the evidence, fairly was not capable of a construction which could have led the jury to believe they were authorized to find for appellees, without reference to whether they believed the act of leaving the cars in the position they occupied was negligence or not, as to Holt and others similarly situated, if they believed such act was negligence as to persons otherwise situated, to whom appellant owed a duty. We do not think the jury could have understood the court to mean by the instruction, read in connection with the remainder of the charge, that they were authorized to find against appellant on the issue as to its

negligence in so leaving the cars, unless they believed from the evidence that an ordinarily prudent person charged with the duty to Holt to use ordinary care to keep track 4 clear would not, under the circumstances shown by the evidence, have so left them on track 5 as to obstruct said track 4.

Notwithstanding the absence of any testimony tending to show that Holt saw the cars, the court instructed the jury: "In addition to the main charge read to you, you are further instructed that, should you find that deceased Holt saw the car upon track 5 in time to have prevented the engine from colliding with same, you will find 'for defendant." Appellant urges that the instruction was calculated to confuse the jury and mislead them to understand the court to mean that their verdict should be for appellees, without respect to other matters, if they believed the negative of the proposition stated in the instruction, to wit, that Holt did not see the cars. As reasonably intelligent men considering the charge as a whole, which we should assume they did, we think the jury could not have been so misled. The seventh assignment of error therefore is overruled.

The eighth assignment of error, complaining of the action of the court in refusing to give a special charge requested by appellant, is overruled because we think the facts grouped for submission by it were sufficiently grouped and submitted in the court's main charge and in appellant's special charge No. 10 given by the court.

The assignment remaining undisposed of attacks as excessive the verdict and judgment rendered. It appears from the record that Holt at the date of his death was twenty-nine years of age, was in good condition physically, had a life expectancy of thirty-six years, an earning capacity from about $50 to about $75 per month, and that his earnings were devoted to the support and maintenance of appellees. The evidence referred to is sufficient, we think, to support the finding of the jury as to the amount of damages suffered by appellees. There is nothing in the record indicating that in arriving at the amount of their verdict the jury may have been influenced by passion or prejudice, or by a consideration of any matter they should not have considered. Therefore we think the assignment should be overruled.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.