**TEXARKANA & FT. S. RY. CO. v. LA VELLE. (No. 2652.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 23, 1922. Rehearing Denied Jan. 4, 1923.)

1. **Master and servant ⬤125(1)—Care required to discover obstruction near spur track.**

A railroad company using a spur track for its advantage owes to its operatives the duty to use ordinary care to discover dangerous obstructions, whether caused by its own servant's act or by another.

2. **Master and servant ⬤125(1)—Knowledge by employer of obstruction near track essential to recovery for injuries.**

Where a switchman, riding on a corner of a flat car on a spur track, was injured by a skid pole protruding too far over a nearby skidway, it devolved on him to show that the pole was in its position by the act of the railway company's employees, or its presence was known to some proper employee, or its close proximity to the track had continued long enough to justify the inference that the failure to know it was due to a want of proper care.

3. **Master and servant ⬤278(14)—Evidence held insufficient to show negligence as to switchman injured by obstruction near track.**

In an action by a switchman injured on a spur track by a protruding skid pole, evidence *held* insufficient to show negligence of the employing railway company in failing to discover and remove the obstruction.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by James La Velle against the Texarkana & Ft. Smith Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Three flat cars loaded with sawlogs were being backed by the switch engine into a certain spur track. It was 10 o'clock at night, and the night was very dark. The appellee, in the performance of his duties as a switchman, was riding on the corner of the front flat car in order to signal the engineer when to stop. A skid pole, protruding too far over a certain skidway nearby, caught appellee's foot and pressed it against the moving flat car, causing an injury. The skid poles and skidway were owned and exclusively used

and controlled by a private manufacturing company doing business near the spur track. Appellee sues for damages for the injury sustained, alleging as grounds of negligence that—

"The skid pole or timber or obstruction that struck and injured the plaintiff had been by the defendant, its agents, servants, and employees, negligently placed or permitted to remain so near the track as to catch, strike, and injure the plaintiff's foot while he was engaged in his work."

The appellant answered by a general denial, and specially plead that it was not necessary for the plaintiff to stand on the car in the position he was in, and that there was a safe way to stand, but that the plaintiff selected the most dangerous way, and in doing so failed to exercise ordinary care and was guilty of contributory negligence. The appellant further plead assumed risk.

The case was tried before a jury, and the general charge of the court authorized a verdict in favor of the appellee upon their finding that, as pleaded, "the defendant had negligently either placed or permitted to be placed, or permitted to remain, the skid pole in its position of close proximity to said car." The verdict of the jury was in favor of the appellee.

On appeal the two points are made: (1) That the evidence fails to show a case of legal liability; and (2) that if a case of liability is made out, the amount of the verdict is excessive in view of the character and extent of injury sustained. In reference to the first proposition, as to liability, it is contended that the evidence fails to show that the defendant, through its employees, either (1) "had placed the skid in the position it was in when it struck and caught plaintiff's foot," or (2) "permitted the skid to be placed' in such position," or (3) "had any knowledge of the position of the skid prior to the time it caught the plaintiff's foot."

The evidence shows that the appellee was a switchman in the appellant's railway "yard" in the city of Texarkana, Tex. His crew worked on the 8-hour shift commencing at 4 o'clock p. m. and ending at 12 o'clock midnight, succeeding the crew working on the preceding 8-hour shift. A "spur track," it appears, connected, at a point not shown, with appellant's main-line track, and extended north, the distance not given, to "the Veneer Works," located, as stated, "east of it." The Veneer Works, presumably a private manufacturing company, operates a fruit and vegetable box and crate factory somewhere, not shown in the evidence, in the vicinity of the end of the spur track. It does not appear whether the plant of the Veneer Works and the spur track are on or off the right of way of appellant. The only evidence respecting the spur track is:

"That spur track was used solely to bring in their (the Veneer Works') logs and to load their stuff; it was not used to make up trains on; it was the Veneer Works' spur track exclusively. We would put in cars of logs for them, and then put in cars for them to load and ship out."

The Veneer Works got its logs for manufacturing purposes in carload lots, and the railway company would switch the loaded cars to a point opposite a skid at the end of the spur track and leave them there, and the Veneer Works would then unload the logs from the cars. At a later time, after the cars were unloaded by the Veneer Works, the switch engine would go and haul the empty cars back, whenever there are empty cars there, to transfer track. As testified by the appellee:

"When they (the Veneer Works) get them unloaded then the day crew (the switching crew) would come in and take the cars out and put them on the T. & P. transfer."

The Veneer Works had, at a time, more than a year before the injury, erected "a skidway" for the purpose of unloading the logs from the cars. The skid is the "height of the flat cars," but the distance it is located from the spur track does not appear. The cars are unloaded thus: Skid poles are so placed as to rest on the flat car and on the skidway, and the logs are then rolled out of the car, over the skid poles, on to the skid and to the yard of the Veneer Works. There were "five or six" skid poles used, and they were about "10 or 12 feet long and something like 8 or 10 inches in diameter." The skid poles, as well as the skid, are the property of the Veneer Works, and are exclusively used and controlled by their employees. At the time in suit there were three cars of logs to be delivered to the Veneer Works, and at about 10 o'clock p. m. the switching crew, of which appellee was a member, proceeded to deliver or "spot" these cars of logs at the skid on the spur track. The tender of the switch engine was attached to the south end of the third car, and pushed the three cars north on the spur track. The appellee, in order to give signals to the engineer, was riding on the northwest corner of the last car from the engine. His right foot was placed on the grabiron, or handhold, on the side of the car, and his left foot on the deck of the flat car, and he was holding to a wire which held fast the logs on the car. The cars were being slowly pushed in on the spur track. A skid pole, it appears, protruded beyond the skidway to the extent that as the front car came to a point opposite the skid the end of the protruding skid pole caught and pressed appellee's right foot against the car, injuring the foot. According to the witness Bryant, who came up immediately after the injury:

"There was just one of those skid poles that came up close, that is, real close. There were several skids there. That pole was not far enough from the side of the car to clear a man's body. To estimate it in inches, it was about a fourth of an inch in the clear of the side of the flat car. It is not customary to have obstructions that close to the track. * * * This pole that I spoke of as being within a quarter of an inch of the car looked like it had been shoved over. I saw it after Mr. La Velle was hurt and it looked like it had been shoved over a little bit where his foot was. This pole seemed to have been pushed over in some way. I think the stake pocket (of the flat car) hit it and kind of pushed it over towards the north, the way the end of the car was moving."

The appellee testified:

"The skid pole caught my foot and pushed it against the pocket of the car. I did not see it before it struck me. There must have been four or five carloads of logs on the skidway. * * * There were some four or five skid poles, and it looked to me like they went back 10 or 12 feet. I know there were three or four logs laying crossways on these skid poles. These skid poles that I spoke of did not lay with the track but laid with the ends towards the track. * * * The skid poles did not come up close to the track except on the night I got hurt; that is the first time I ever saw them there. * * * When the cars would be put in there the skid poles would always be shoved back, they always had been; they (the Veneer Works) would always unload the logs and then shove them back."

Appellee had been switching there for more than a year. There is no evidence that railway employees had placed the skid pole in close proximity to the cars, or had any notice of its proximity at any time before the injury. It does not appear how long before the injury the skid pole had protruded beyond the end of the skidway. It was shown that one or more carloads of logs had been unloaded at a time not shown on the skidway, and also that a switching crew had returned and gotten empty cars off the spur track at some time prior to 4 o'clock of the day of the injury. But whether the switching crew had returned and carried away the empty cars from the spur track several hours or several days before 4 o'clock of the day in suit does not appear.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

Keeney & Dalby, of Texarkana, and Jones, Sexton & Jones, of Marshall, for appellee.

LEVY, J. (after stating the facts as above). The facts proven, substantially stated above, are to be considered in passing upon the point made on appeal that the evidence fails to show negligence as pleaded by appellee. It is affirmatively shown that five of the six skid poles used on the skidway were pushed back on the skidway with "three or four logs laying across the ends," and that the remaining skid poles projected beyond the end of the nearby skidway and reached so close to the spur track as to injure the foot of the appellee, a switchman, while he was riding on a passing flat car loaded with logs for delivery at the skidway. This is the situation described by the witnesses as existing at "the time of the injury." But the situation of the skid poles at any time prior to the very "time of the injury" is not shown by any evidence. There is no evidence that any employee of the railroad company ever handled or used the skid poles, and there is evidence, as testified by appellee, that none of the skid poles had been left in close proximity to the spur track at any time for a year before by the employees of the Veneer Works.

[1-3] Whether the spur track was owned by the railway company or the Veneer Works is not made clear by the evidence. Yet it is clear from all the evidence that the railway company used the spur track for its advantage. In so using the spur track the railway company owed the duty to the operatives of the train "to use ordinary care," as laid down in Railway Co. v. Hohn, 1 Tex. Civ. App. 36, 21 S. W. 942—

"to discover within reasonable time, and remove, any obstruction of the track dangerous to the employees, however it may have come there, whether by the act of the servant or by that of a stranger or by accident."

Provided further, as stated in Railway Co v. Jones, 103 Tex. 187, 125 S. W. 309:

"In order to constitute it [negligent failure to use ordinary care], the bolt must have been put on the track by some employee, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the failure to know it was due to a want of the proper care."

Under these rules, then, it devolved upon the appellee to show, either by direct or circumstantial evidence, that (1) the skid pole was in its position "by the act of its (the railway company) employees," or (2) its presence and proximity to the track was known to some proper employee of the railway company before the injury, or (3) its close proximity to the spur track "must have continued long enough to justify the inference that the failure to know it was due to a want of the proper care." There is failure, we conclude, in the sufficiency of evidence in the record to meet the required burden of proof. For the Veneer Works, a private manufacturing company, and not the railway company, it is admitted, owned, controlled, and exclusively used the skidway and the skid poles. From this admitted fact would, in the absence, as here, of further evidence, arise the presumption or inference either that the employees of the Veneer Works, or some other

person, rather than the employees of the railway company, put the skid pole where it was and allowed it to be there. And especially so since there is no evidence even tending to show that any employee of the railway company ever did handle or use the skid poles, in this instance placed the skid pole where it was. While there is evidence to the effect that the day switching crew, or the shift preceding the shift that appellee worked on, usually pulled the empty cars, whenever there were empty cars there, from the spur track, still the evidence does not show that on that day any empty cars were withdrawn from the spur track. On the other hand, it affirmatively appears that there were no cars at all on the spur track at 4 o'clock of the day of injury and until the moment of the injury. Consequently any inference that cars being removed from the spur track might have pulled the skid pole out cannot be properly indulged. It would be strange that only one skid pole was pulled out and the other five left there "with logs laying across the ends." In these circumstances, unexplained by further evidence, it would be mere conjecture, and not based on a reasonable inference arising from a given situation, to say that an employee of the railway company caused the skid pole to be in close proximity to the car, or knew of its presence there before 4 o'clock of that day, or that the skid pole was in that position from before 4 o'clock until the injury at 10 o'clock. And there is no evidence that the skid pole was projecting out before "the time of injury."

After carefully considering all the evidence, it is firmly believed that it is too weak to predicate the allegations of the petition upon, and that the judgment should be reversed and the cause remanded, which is accordingly ordered.