## TEXARKANA & FT. S. RY. CO. v. LA VELLE. (No. 2865.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 18, 1924. Rehearing Denied March 6, 1924.)

1. Master and servant ☞96(2)—Railroad not liable for strangers' acts in putting obstruction near tracks.

A railway company is not liable for injuries to its employees caused solely by the act of strangers in putting a temporary obstruction on or dangerously near its premises, unless it also is guilty of negligence.

2. Appeal and error ☞1062(1)—Submission of erroneous ground of recovery prejudicial error.

Submission to the jury of an erroneous ground of recovery is prejudicial error.

3. Master and servant ☞125(6)—Railroad's liability for injuries from obstruction near track held dependent on knowledge.

A railroad's liability for injuries to a switchman, whose foot was caught and pressed against a moving flat car on which he was riding by a skid pole protruding too far over a skidway on adjoining premises of a private manufacturing company, held dependent on whether the pole had been in such position long enough to impute negligent failure to know the fact; negligent ignorance having the same

effect in charging the employer with liability as actual knowledge.

4. Master and servant ☞125(1)—Presence of temporary obstruction near track held not to show negligence per se.

That a skid pole on private premises adjoining railroad premises protruded so far over the latter as to be in dangerous proximity to a passing flat car, on which a switchman was riding when injured by coming in contact with it, held not negligence per se or sufficient to impute negligence to the railroad company, but only a circumstance from which negligence might be found by the jury from circumstances suggestive to the company of the probability that employees of the owner of the adjoining premises would leave the pole in such position, so as to devolve the duty of inspection on the company.

5. Master and servant ☞286(25)—Railroad's knowledge imposing duty to guard against injury to employees on cars by skid poles left by owner held for jury.

Whether employees of a manufacturing company on premises adjoining railroad tracks ever failed to place or remove skid poles used in unloading logs so as to be free from dangerous proximity to passing cars, thereby devolving on the railroad the duty of making inspection to guard against injury to its employees on passing cars, held for the jury, in an injured switchman's action against the railroad.

6. Master and servant ☞125(9)—Switching foreman's knowledge of conduct of employees of owner of adjoining premises endangering railroad employees imputed to railroad.

A switching foreman's knowledge that employees of a manufacturing company on premises adjoining railroad tracks sometimes left skid poles used in unloading logs protruding over the railroad's premises in dangerous proximity to passing cars after working hours would impute such knowledge to the railroad company, so as to devolve on it the duty of making inspection to guard against injury to employees riding on cars.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by James La Velle against the Texarkana & Fort Smith Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 247 S. W. 617.

Three flat cars loaded with sawlogs were backed by the switch engine into a certain spur track. It was 10 o'clock at night, and the night was very dark. The appellee, in the performance of his duties as a switchman, was riding on the corner of the front flat car in order to signal the engineer when to stop. A skid pole protruding too far over a certain skidway nearby caught appellee's foot and pressed it against the moving flat car, causing the injury. The skid poles and skidway were owned and exclusively used and controlled by a private manufacturing company doing business on property adjacent

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to the right of way of the railway company. The appellee sues for damages for the injury sustained, alleging as grounds of negligence that—

"The skid pole, or timber, or obstruction that struck and injured the plaintiff had been by the defendant, its agents, servants and employees negligently placed or permitted to remain so near the track as to catch, strike and injure the plaintiff's foot while he was engaged in his work."

The appellant answered by a general denial, and specially pleaded that it was not necessary for the plaintiff to stand on the car in the position he was in, and that there was a safe way to stand, but that the plaintiff selected the most dangerous way, and in doing so failed to exercise ordinary care and was guilty of contributory negligence. The appellant further pleaded assumed risk. The case was tried before a jury, and their verdict was in favor of the appellee.

The evidence shows the following facts: The appellee was a switchman in the appellant's railway yard in the city of Texarkana, Tex. His crew worked on the eight-hour shift commencing at 4 o'clock p. m. and ending at 12 o'clock midnight, succeeding the crew working on the preceding eight-hour shift. The Veneer Works is a private manufacturing company operating a fruit and vegetable box and crate factory. The Veneer Works got its logs for manufacturing purposes in carload lots, and the railway company would switch the loaded cars to a point opposite a skidway sidewise of the spur track running by it. The Veneer Works had, at a time about a year before the injury, erected the skidway for its own use and purpose in unloading logs from the cars. The skidway is the height and about the length of a flat car, and fronts near the track about the length of a car. The spur track was used solely to deliver the cars of logs to the Veneer Works and to receive their products for shipment. It was not used for any other purpose. The railway company would leave the loaded cars on the spur track, and the employees of the Veneer Works would then at a later time unload the logs from the cars to the skidway. In order to unload the logs from the cars onto the skidway, the employees of the Veneer Works used six skid poles provided for the purpose by the Veneer Works. The skid poles, 12 feet long and 10 inches in diameter, were laid with their ends resting on the flat car and the greater part of the length on the skidway, serving as a bridge for the unloading. After unloading the logs, and before quitting the day's work, the employees of the Veneer Works customarily removed the skid poles and laid them back on the skidway. It was affirmatively shown that at no time had the employees, after unloading the cars, ever left the skid poles protruding from the skidway towards the track. The witness Bryant, though, makes the statement that—

"I have seen them out a little ways to where it would not clear a man on the side of a passing car."

He does not state when this situation existed, or how often it occurred. At the time in suit there were three cars of logs to be delivered to the Veneer Works; and at about 10 o'clock p. m. the switching crew, of which appellee was a member, proceeded to deliver, or "spot," these cars of logs at the skidway on the spur track. The tender of the switch engine was attached to the south end of the third car and pushed the three cars north on the spur track. The appellee, in order to give signals to the engineer, was riding on the northwest corner of the last car from the engine; his right foot was placed on the grabiron, or handhold on the side of the car, and his left foot on the deck of the flat car, and he was holding to a wire which held fast the logs on the car. The cars were being slowly pushed in on the spur track. A skid pole, it appears, protruded beyond the skidway to the extent that as the front car came to a point opposite the skidway the end of the protruding skid pole caught and pressed appellee's right foot against the car, injuring the foot. The skid pole was within a quarter of an inch of the car. This particular skid pole was protruding about four inches further than the other five poles. Lying on the rear ends of the skid poles was between 2,000 and 2,500 feet of green sweet-gum logs, having the effect of firmly fastening the poles to the skidway. It is inferable from the evidence that this situation had continued for some hours before the injury. It is conclusively shown that the employees of the Veneer Works had placed and left the skid poles in that position; and there is no evidence that the employees of the railway company had any notice of the proximity of the protruding skid pole to the track at any time before the injury.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

Jones, Sexton & Jones, of Marshall, and Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). Complaint is made of the charge of the court reading:

"And if you further believe that the defendant had negligently either permitted to be placed, or permitted to remain in its position of close proximity to said car, the said skid, whereby plaintiff was injured, and if you further believe that the negligence, if any, of the defendant, was the proximate cause of the injuries as received by plaintiff, you will find for the plaintiff, unless you find for the defendant under other paragraphs of this charge. If the evidence fails to show that the defendant

negligently placed said skid in its position, or fails to show that defendant could, by the use of ordinary care, have discovered the position of said skid in time to have removed it before the plaintiff was injured, then you will find for the defendant."

The point is that the evidence in the case does not show, or tend to show, either (1) that the skid pole was by the railway company "negligently permitted to be placed in its position of close proximity to said car," or (2) that the skid pole was by the railway company "negligently permitted to remain in its position of close proximity to said car." As to whether or not there were the distinct grounds of negligence depends entirely upon the precise facts appearing in the record. It conclusively appears that the skidway and the skid poles were owned, and exclusively controlled and used, by the Veneer Works, a private industrial plant located adjacent to the right of way of the railway company. Near the skidway runs a spur track built and used by the railway company solely for the purpose of specially delivering and receiving freight of the Veneer Works. The Veneer Works got its logs for manufacturing purposes by carload lots, and the railway company would switch the loaded cars to the spur track and leave them there. The Veneer Works, through its own employees, would then unload the logs from the cars onto the skidway. There are no disputed facts concerning who did the unloading of the cars, and as to the manner and way of doing it. The employees of the Veneer Works at all times did the unloading, and the employees of the railway company never at any time unloaded or assisted in unloading them. And on the occasion in question it is conclusively shown that the employees of the Veneer Works, in virtue of the progress of the work of unloading logs, left the skid poles protruding from the skidway in a position of dangerous proximity to a passing car on the spur track. In this respect it appears that the railway company delivered three cars of logs on the spur track on the day of January 13th, and the employees of the Veneer Works unloaded them. At 10 o'clock on the night of January 14th the railway company next delivering three more cars of logs on the spur track, and the appellee, by reason of the protruding skid poles, was injured. One of the skid poles extended from the skidway four inches further than the other five, and to the distance of "a quarter of an inch" of the passing car that appellee was riding on. According to the testimony of the witness Moore, foreman of the Veneer Works:

"The logs that were unloaded there on the 13th were left there in the position they were unloaded until the 14th, and they were then rolled back and cleared back for the logs that were coming in that night. There were a good many logs down there on the 14th; it was a pretty long skidway, and there were three cars

of logs there. On the 14th we had some men to go and roll them further back—to get them out of the way so that other cars could be unloaded."

He further testified that at 6:30 o'clock a. m. of January 15th, after the injury, there was "lying on the ends of the skid poles on the skidway between 2,000 and 2,500 feet of green sweet-gum logs. It was not possible for one man to have moved this skid pole; a dozen men could not have moved it without first moving the logs back off of it."

From this testimony it is inferable that the skid poles were left in the position they were in both on January 13th and 14th when the employees of the Veneer Works quit their work for the day; but it is evidence that such employees left them there in that position upon quitting work for the day of January 14th. But the evidence given by the witnesses affirmatively and especially shows that the employees of the Veneer Works had never at any time before this, during the year since the skidway was erected, left the skid poles protruding to passing cars on the spur track, but had habitually removed them after unloading cars and placed them on the skidway. Appellee himself testified:

"The skid poles did not come up to the track except on the night I got hurt; that is the first time I ever saw them there. * * * When the cars would be put in there, the skid poles would always be shoved back; they always had been; they would alway unload the logs and then shove them back."

[1] In view of the special circumstances shown in this case, it is concluded that negligence on the part of the railway company cannot be legally predicated upon the first ground, as charged by the court, that it "negligently permitted to be placed the said skid in its position of close proximity to said car," for it conclusively appears that the skid poles were in the position existing in virtue of the progress of the work of the Veneer Works' employees of unloading logs. They failed to remove the skid poles after unloading the cars and before they quit work for the day of January 14th, and there is no pretense or suggestion in the evidence that any employee of the railway company placed them in that position. The fact alone that the appellant knew of and licensed the use of skid poles in unloading cars would not make it absolutely responsible in this case for this particular occurrence. It is undisputed that the railway company had no control or authority over the employees of the Veneer Works, or the instrumentalities they used, or the manner in which they used them in unloading logs. The skid poles were necessary and proper instrumentalities with which to unload logs from cars, and as long as they were properly used in a manner or way or at a time not calculated to do injury to the premises or employees of the railway company, it

had no legal right to interfere and prevent their use on its cars. The duty and right of the railway company to interfere would only arise when the skid poles were untimely left remaining in a place or position to be a dangerous obstruction on its premises, too near its track or passing cars for the safety of its employees. And clearly the railway company on this particular occasion was not called upon "to prevent" the "placing" of the skid poles for the purpose of unloading logs; for in the circumstances the appellant had no reasonable ground to anticipate that the employees of the Veneer Works would do the very act on this special occasion of leaving the skid poles so near the cars. It is a plain and well-established rule of law that a railway company, like any other, is not liable for injuries caused solely by the act of strangers putting a temporary obstruction on or dangerously near its premises, unless it also is guilty of negligence. Railway Co. v. Jones, 103 Tex. 187, 125 S. W. 309.

[2] The error necessitates a reversal of the judgment, since the submission to the jury of any erroneous ground of recovery is prejudicial and not harmless error. Lancaster v. Fitch, 112 Tex. 293, 246 S. W. 1015.

[3] It is believed that it cannot be said that there is an insufficiency of evidence to pass to the jury the question of whether or not there was negligence on the part of appellant in "permitting said skid to remain in its position of close proximity to said car." The liability of appellant to appellee would be measured by whether or not the skid pole continued in the position of protruding over on its premises in dangerous proximity to the passing car untimely enough to impute negligent failure to know it was there in that position. Railway Co. v. La Velle (Tex. Civ. App.) 247 S. W. 617. For negligent ignorance has the same effect in law in charging the employer with liability as actual knowledge.

[4] Under the circumstances in this case, though, the mere fact alone that on this occasion the skid pole protruded to the extent it did at the time of the injury would not constitute negligence per se, nor be sufficient to impute negligence to appellant. The fact that it protruded at the time of the injury is legally only a circumstance from which negligence may be found, provided under all the circumstances of the case the duty on the part of appellant arose to make inspection to see that it was in that position before the appellee switched the cars to that spur track. In order to legally devolve the duty of inspection in this particular instance to see whether or not the skid pole protruded near the car, there must affirmatively appear some circumstance suggestive to appellant of the probability that the Veneer Works' employees would leave it in a position too near a passing car; for a duty to inspect does not arise where there are no circumstances suggestive of the probability of the occurrence, quite recent in time, as here. For instance, if a like occurrence had not happened before, and the employees of the Veneer Works customarily placed the skid poles at a place free of obstruction to the track, and the track was only used for the single purpose of delivering freight to the one industrial plant, then in such facts the railway company would have no reasonable ground to believe or anticipate that the employees of the Veneer Works would do the act complained of on this exceptional occasion and at this time. The appellant then could reasonably rely on the employees of the Veneer Works removing the skid poles, as they customarily did, by the time they quit work for the day on January 14th.

[5] But, on the other hand, if there are circumstances tending to show that on former occasions there was such prior negligent use by the employees of the Veneer Works of the skid poles as to bring notice to the railway company that such employees did not invariably remove the skid poles from dangerous proximity to the cars, then the duty of inspection does arise to guard against injury to appellee. In the former appeal there were no such circumstances. The record in this appeal is somewhat different in that respect. The witness Bryant, engine foreman of the switching crew, testified:

"While on all occasions before this time the skid poles were where they would not catch a man's foot, I have seen them out a little ways to where it would not clear a man on the side of a passing car."

[6] The witness does not further explain the occurrence he speaks of—whether it happened one or more times, or whether it was during the progress of unloading logs, or after the employees had quit work for the day. The inferences, though, from the statement, is a matter for the jury. Such statement, though indefinite, would appear to present occurrences going to show that the employees of the Veneer Works did not invariably place or remove the skid poles so as to be free from dangerous proximity to passing cars. If the switching foreman knew of such occurrences, happening, if they did, after working hours, or untimely, his knowledge would operate to impute such knowledge of the occurrence to the appellant.

The judgment is reversed, and we conclude that the cause should be remanded for another trial.