## Fred BUTZ, Appellant, v. UNION PACIFIC RAILROAD CO., Respondent.

No. 7441.   Decided December 10, 1951.   (238 P. 2d 1128.)

For former opinion, see 120 Utah 185, 233 P. 2d 332.

*Rawlings, Wallace, Black, Roberts & Black, Wayne L. Black,* Salt Lake City, for appellant.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, Dan A. Alsup,* Salt Lake City, for respondent.

PER CURIAM.

Rehearing denied.

WOLFE, Chief Justice (dissenting).

I believe that this court should announce to the Bar what leeway may be given to a construction of the pleadings and the issues framed thereby, after trial of the lawsuit and appeal to this court. The defendant railroad's petition for rehearing raises this question, and it is a matter which was not given consideration in our former discussions.

Paragraph seven of the plaintiff's complaint states as follows:

"That defendant was negligent, careless, heedless and reckless at the time and place aforesaid in the following particulars:

"(a) That defendant, well knowing that switchmen and other of defendant's employees in the ordinary, customary and usual course of their employment were required to and did ride engines and cars in a westerly direction along the outside baggage track while stationed on the north side of such equipment and well knowing that such employees were likely to be placed in a dangerous and hazardous position if baggage trucks and other equipment were left standing

on said platform so near to the rail side thereof as to impair clearance between said trucks and engines or cars passing said platform on said baggage track, *nevertheless negligently, carelessly and recklessly left not less than ten baggage trucks along the said platform* in a position so near the north rail of the outside baggage track as to materially impair said clearance and to thus endanger men riding on the north side of cars moving in a westerly direction on said track; that as a result of said negligence and careless conduct plaintiff, while stationed on the north side of a car moving by said platform, due to the inadequate and insufficient clearance between said baggage trucks and the side of said car, was carried into violent contact with said baggage trucks and caused to suffer the grievous personal injuries, loss and damage herein complained of." (Emphasis added.)

The defendant's answer admits that an accident took place on the outside baggage track in the manner which plaintiff's proof showed it occurred. Plaintiff himself was the only witness who testified as to liability. A Dr. Clegg gave the medical testimony regarding plaintiff's injuries. Plaintiff did not state that baggage trucks had ever been left across the yellow safety line before. On cross-examination he stated that the Denver Union Terminal Co. handles the baggage trucks and not the Union Pacific. At the close of the plaintiff's case, the defendant moved for judgment of nonsuit on the ground:

"First there is absolutely no evidence to submit this case to the jury and make a prima-facie case where the defendant may be found guilty of negligence as charged in the plaintiff's complaint or otherwise * * *."

The trial court in granting the motion stated his reasons to the jury as follows:

"In view of the fact that you have put in almost a day in this matter I think you are entitled to some explanation why I am doing that. The Plaintiff, of course, as an employee of the Union Pacific Railroad Company charges the Union Pacific was negligent and if you will observe he was the man that was directing the operation of this train out on the lead and closest to these little baggage trucks strewn along the right-of-way. But they were left over the yellow line by the employees of the Denver Terminal Company, which the evidence shows is a separate company from the Union Pacific and

there is no tie-in between the Union Pacific and the Denver Terminal Company, so *if there was negligence it was negligence, not of the Union Pacific Company's and its employees, but the Denver Terminal Company.* As you have probably observed in this case nobody is to be charged with damages unless they have done something through their employee or themselves. * * *" (Emphasis added.)

Appellant argued in his brief that

"the trial court erred in holding as a matter of law that the defendant was not negligent."

In doing so, he took the position that:

"(a) Where an employee is sent on the premises of another to work side by side with employees of another and suffers injury by reason of an unsafe condition created by the negligence of the owner of the premises or the owner's servants, such negligence is imputed to and becomes that of the employer.

"(b) Whether the defendant furnished plaintiff a *reasonably safe place to work* was a question of fact for the jury." (Emphasis added.)

The respondent, at page 6 of its brief, stated:

"At the outset we call to the court's attention the fact that the plaintiff did not actually allege that the defendant had violated this duty which the law imposed of exercising reasonable care to furnish a reasonably safe place to work. Actually, he alleged that the defendant had left the hand trucks in the position creating impaired clearance."

But from there, respondent went on to refute the appellant's argument concerning the safe place to work theory.

We reversed the trial court, basing our opinion upon the theory that there is sufficient evidence in the record from which a jury could deduce that the railroad had failed to take reasonable precaution in providing a safe place to work.

We have just recently adopted the rules contained in Utah Rules of Civil Procedure with the general belief that such rules were designed to allow a greater liberality in

overlooking previous technical requirements in order to dispose of each matter on its merits. Rule 8 (f) states,

"All pleadings shall be so construed as to do substantial justice."

Rule 15 (a) regarding amendments states as follows:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; * * *."

In the instant case, a fair reading of the plaintiff's complaint, particularly paragraph 7 set out above, leads to the conclusion that plaintiff meant to and did try his case on the theory that the defendant and not the Denver Union Terminal Company had left the hand trucks in the way of the backing train. Defendant's motion to dismiss was based on the ground that the evidence failed to prove any negligence in this regard, and the trial court's remarks show that he thought this was the issue before him and that the motion should be granted for lack of proof. Nothing in the record indicates that plaintiff urged the court to consider the evidence as presenting a jury question on whether defendant had provided a safe place to work. An amendment asking that the pleadings be made to conform to the evidence would have been proper and would thereby have notified the defendant that liability was claimed on such ground. The trial court could have amended the pleadings on his own motion, but if no request was made for him to do so, it certainly cannot be prejudicial error that he failed to see a hidden additional theory upon which plaintiff's case might be sustained.

This switch in theories is one of the reasons which made the case an exceptionally difficult one to decide. The majority opinion states 120 Utah 190, 233 P. 2d 334

"There is abundant authority that a defendant employer is charged with responsibility for conditions of danger upon the property of others of which it either has actual knowledge or is charged with constructive knowledge because the hazard is of such a nature and has existed for sufficient time that in the exercise of reasonable care the employer should have discovered it."

But the evidence adduced at trial did not show that baggage trucks had ever before been left so as to impair the clearance. Thus, there was no proof that the defendant had actual knowledge that a condition existed which made it an unsafe place to work. Cases imputing constructive knowledge to the employer of unsafe conditions which involved permanent structures were cited, but it was not declared that wheeled baggage trucks which could be moved readily were analogous to fixed stationary objects. The Terminal Company in leaving the baggage trucks in the way were chargeable with an isolated act of transitory negligence. There is no evidence in the record to show that defendant had either actual notice of the impaired clearance or that it should have constructive knowledge that a permanent impaired clearance existed. The opinion does not state that the defendant had notice of any unsafe condition. The case was not tried on an unsafe place to work theory. There being no evidence upon which it could be shown that the defendant knew that the baggage trucks were in the way, or that it permitted them to remain, the opinion indulged in speculation as to what "further precautions were possible." But to take cautionary measures presupposes that the defendant had knowledge of the existence of a hazardous condition. The plaintiff did not introduce evidence which characterized the baggage platform as a hazardous place. Therefore, the quandary which this court's opinion raises is due to a relaxation of our former procedural requirement that only those issues tried in the lower court could be argued on appeal.

In addition to the cases cited in my dissenting opinion which dealt with temporary hazardous conditions, *Tex-*

*arkana & Ft. S. Ry. Co.* v. *La Velle,* Tex. Civ. App., 260 S. W. 248, and *Waller* v. *Northern Pacific Terminal Company of Oregon,* 178 Or. 274, 166 P. 2d 488, certiorari denied 329 U. S. 742, 67 S. Ct. 45, 91 L. Ed. 640, I further consider *Wetherbee* v. *Elgin Joliet & Eastern Ry. Co.,* 7 Cir., 191 F. 2d 302, 306, decided May 23, 1951, and cited therein is *Killian* v. *Pennsylvania R. Co.,* 336 Ill. App. 152, 82 N. E. 2d 834, certiorari denied 338 U. S. 819, 70 S. Ct. 63, 94 L. Ed. 497.

In the *Killian* case, plaintiff conductor requested removal of some oil drums alongside a spur track on private property which impaired the clearance. While riding on the side of a car, and in complete charge of the switching movement of the train, he was brushed off by the barrels and injured. The court held that the evidence failed to show any negligence on the part of the railroad in failing to keep the track clear of impedimenta where the conductor was the agent of the railroad charged with the duty of keeping the track clear for safe movement of the train. In the *Wetherbee* case, the wheels of the lead car being backed on a private track which served the Ruberoid plant, ran up on a board, causing the car to derail and the death of the switchman riding that car. Upon these facts, the court held there was no liability. The following quotations are directly applicable to the *Butz* case:

"But these cases involved accidents where permanent structures. had been erected allowing insufficient clearance, or where objects had long been permitted, with the knowledge of the railroad company, to remain on or near the tracks, thereby presenting a fact situation distinguishable from the case at bar. Here the board was a *new* threat to safety, not something about which the railroad itself had previous knowledge, even though boards had on some previous occasions been found on or near tracks in the Ruberoid plant. * * *"

"Granted that defendant railway had a duty to have someone inspect the tracks before the cars and engine passed, it was Weatherbee's duty to make that inspection by watching the track ahead of the movement."

The failure of plaintiff's counsel to try this case upon a safe place to work theory has resulted in publication of an opinion of this court which is based on a record showing no evidence that defendant had knowledge of the impaired clearance because of the baggage trucks, nor is there any testimony showing a duty on the part of anyone other than the plaintiff, Butz, to watch out for the safe movement of his train. No legal theory is presented whereby the railroad was negligent in failing to provide a safe place to work.

Even if the complaint may be interpreted to mean that defendant is charged with failure to provide a safe place to work, it was not so construed by the parties or by the trial court during the time of trial. This switch in theories between the time of trial and appeal to this court is a procedural problem which merits this court's consideration. The problem is twofold: First, has the defendant waived any objection to such a switch in theories by arguing in his brief that recovery should be denied on the safe place to work theory? If so, then we should inform defendant's counsel and the Bar in general, that it is necessary to confine their briefs to the theory which they contend was raised by the pleadings. If the respondent had confined its brief to the theory tried below, then this court would have been called upon to squarely determine whether a party to a law suit is bound in this,—an appellate and error reviewing court—by the interpretation of the pleadings, and on the theory on which it was tried by the district court. Second, has the defendant been prejudiced? Might the defense have been any different if the complaint had charged the railroad with negligently failing to provide a safe place to work? If the defendant was apprised at the time of trial of the theory now urged in this court, it might have secured other "field men" who have frequently ridden into the Denver Union Terminal and their testimony might reveal that the practice of having a field man ride on the lead car in the position which plaintiff was when he was

injured, is the safest and most feasible way known to keep watch and provide a safe place to work. In any event, the defendant should not be required to anticipate and prepare a different case than that which the pleadings inform him is to be tried.

The fundamental question is then this, To what extent under the Utah Rules of Civil Procedure should this court depart from the old practice of merely reviewing errors committed in the trial of the cases below, and permit the extension of trial functions to be conducted in this court? We have permitted the plaintiff to prevail in the Butz case on the theory that the evidence sufficiently presents a jury issue, though that issue was not urged by counsel at the trial. Although it may be thought that we are merely remanding the case and allowing the parties to proceed in accordance with our opinion, we have in practical effect allowed an amendment to the pleadings to be made in this court. Do the new rules contemplate or authorize this to be done? If so, in what cases and more important, what are the limits or restrictions which apply? There must be finality to the trial court's decision which decides every point brought to its attention, or else this court may be swamped by appeals which raise matters heretofore considered within the realm of the trial court. These procedural questions continually creep into cases and raise issues concerning the construction of the new rules. Much uncertainty now exists. I believe we should "settle the dust" by requiring the parties to this suit to dig out the Federal cases on this subject and furnish this court with authority and argument, so that we may put some meat on the framework of the rules. It perhaps involves a problem of balancing the desirability of obtaining a just result in each case with a uniform procedural system, under which the parties may be able to determine with some certainty the course of trial of a lawsuit. It would seem very necessary that the Bar be informed as to when the failure to plead a matter or adhere to a theory is or is not a fatal defect.

I believe a petition for rehearing should be granted in order to make known whether deviation from theories on which a case is founded in the trial court is possible when it reaches this court and if so, what degree of flexibility and change is permitted in presenting the case in this court from that urged in the trial court. The problem is fundamental to our whole system of trial and appeal. Failure to wrestle with it may result in chaos in appellate procedure.

McDONOUGH, J., concurs.