REUBEN H. LAF FERRY, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED DECEMBER 31, 1925.   No. 23533.

1. **Master and Servant:** NEGLIGENCE. The mere fact that a stack of freight fell, resulting in an injury to an employee, is not of itself evidence of negligence of the employer or coemployee in a case, such as this, where it is necessary to allege and prove negligence.

2. ———: Assumption of Risk. Where it is an employee's duty, as in this case, to store and pack freight in stacks, and restore such freight as may become disarranged in the course of the business, the risk of injuries arising from such placement and replacement is one of the risks assumed by him as such employee.

3. ———: ———. Where, as in this case, there is no evidence of negligence on the part of a common carrier engaged in interstate commerce, its officers, agents, or employees, nor of a breach of any regulatory statute enacted for the safety of its employees, the rule of assumption of risk of a coemployee's negligence, either at common law or as modified by the federal employers' liability act, does not apply.

4. Record examined, and held without evidence to support the judgment.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*Byron Clark, Jesse L. Root, P. E. Romig, J. W. Weingarten* and *C. W. Krohl,* for appellant.

*Allen G. Fisher* and *M. F. Harrington, contra.*

Heard before DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

Reuben H. Laf Ferry, appellee, hereinafter called plaintiff, brought this action in the district court for Dawes county against the Chicago, Burlington & Quincy Railroad Company, appellant, hereinafter called defendant, to recover $20,000 for certain personal injuries sustained while in defendant's employ. He alleges, in substance, that while so employed, and in the furtherance of his duties, and while he was piling freight which had been previously negligently handled by defendant's employee Bean, the same collapsed, and at the same time there came down a wagon axle which plaintiff was trying to place upon such freight, which struck his foot causing the injury complained of.

Defendant admitted the employment, and that plaintiff received some slight injury, and denied every other allegation. It then alleges that whatever injury plaintiff suffered

grew out of his own negligence, and out of risks which he assumed by reason of his employment.

The substance of plaintiff's reply is a denial of all new matter in the answer.

At the close of the evidence defendant interposed a motion for an instructed verdict, based on the insufficiency of the evidence, which was overruled. The case was sub-. mitted to the jury, and a verdict returned for plaintiff for $10,000. Motion for a new trial was overruled, and judgment entered. To reverse this, defendant appeals.

Defendant contends that, as there is no evidence to sustain a verdict in favor of the plaintiff, its motion for an instructed verdict was erroneously denied. This is met by plaintiff's insistence that, if error, it cannot now be considered, for the reason that defendant, after such motion was overruled, submitted instructions, which were given, assuming that there was evidence for the jury, and by reason thereof is estopped to now. claim the contrary. The last expressions of this court on this question are found in *Sorensen v. Sorensen,* 68 Neb. 509, and *Haslam v. Barge,* 69 Neb. 644. In the former case we said: "When in a jury trial a party moves the court to instruct a verdict in his favor, which is overruled and he is compelled to submit the matter to the jury, he may assist the court in a proper submission of the matter without thereby estopping himself to afterwards contend that a verdict against him is not supported by the evidence. In such case the rule of *American Fire Ins. Co. v. Landfare,* 56 Neb. 482, does not apply." This rule was approved and extended in *Haslam v. Barge, supra,* and is controlling in this case.

It is agreed that plaintiff was engaged in interstate commerce at the time of the injury, and that the action is governed by the federal employers' liability act, and that the following are the issues for our determination: (1) Whether defendant was negligent as alleged in plaintiff's petition; (2) whether plaintiff assumed the risk which caused his injury; (3) whether plaintiff was negligent; (4) what injuries plaintiff sustained.

Taking up the issues in their order, the following facts are reflected by plaintiff's testimony, he being the only witness in his behalf as to events occurring prior to the injury: Plaintiff was employed by defendant in its freight house at Casper, Wyoming, his duty being to store and pile freight, keep the stack intact by replacing any and all such freight left disturbed by himself or other employees, and reforming any and all stacks disarranged when demanded by new freight coming in, or removal of parts of the freight stored, he having full charge of such placement and replacement; that on November 7, 1921, after he had been engaged in such employment for about nine months, shipments of freight, among others, were received at Casper for Holland Brothers and one Heistand. The Holland shipment consisted of kegs, boxes, and five or six timbers for wagon axles, each axle being about six feet long, and weighing from 75 to 100 pounds. Plaintiff piled each shipment in what is called stall "H," placing the axles on top of the stack containing the Holland shipment, which stack was about six feet high. He also stored the Heistand freight, leaving a space of about five or six feet between these shipments.

Some steel beams had been placed near the Holland shipment, which, in the course of the day's business, were removed by Bean and other employees of defendant working under his direction, in the course of which removal the axles were taken from the top of the Holland stack and placed on the floor by them. This was done without disturbing the rest of the Holland stack. In the meantime, freight in the Heistand shipment had been called for, and in removing same that stack became disarranged and scattered over the floor. Plaintiff, being engaged nearby in the line of his duty, observed these removals. An hour or so later plaintiff entered upon the restoration of these stacks, as was his duty, commencing with that of Holland. He had replaced all of the axles on top of the stack save one, which, when he threw it upon such stack, bounded back, the entire stack collapsing at the same time. As such axle bounded

back, plaintiff attempted to get out of the way, but became tangled in the disarranged Heistand freight, and the axle struck his foot, giving rise to this action.   Plaintiff, in response to an inquiry by his counsel, described the occurrence as follows:   "Q. In answer to a question by counsel for the Burlington you have said that at the time you were hurt the only pile that collapsed was Holland Brothers freight. In answer to my question you said there was some other stuff fell down.  I wish you would tell the jury what you mean.   * * * A. Why, the Holland Brothers shipment, I had it all stored after it had been disarranged, and there was other goods over here that had been disarranged too, and I hadn't got to that yet; and I was working in a small space between these bundles of freight over here, and when I put up that last axle I was up pretty high.   I remember I had to exert myself to put it up there.   I was forming a platform up there with these axles and kegs to conserve floor space, and when I put it up there it bounded back and I undertook to get out of the way and fell against this other freight and couldn't get out of the way.   I got tangled up in this other freight that had been disarranged by Mr. Bean that I hadn't got stored as it should be.   Q. Was that the stuff that had been disarranged and had fallen down?  A. Yes."

The record is without evidence showing or tending to show that the steel beams which Bean removed at any time furnished support for the Holland stack, or that their removal in any way weakened or disarranged such stack, or that the removal of the axles did not leave the remainder of the stack intact as placed by plaintiff, or that there was any negligence on the part of Bean or any other employee as to any of the matters involved.   In answer to the question, "The axles was the only things that was disarranged in that shipment?" plaintiff answered: "Yes, sir.   Q. And you picked them up and brought them over to this pile of Holland Brothers freight which had not been disarranged? A. Yes."   The mere fact that the stack fell when struck by the axle in question is not of itself evidence that the

stack remaining after Bean removed the axles was thereby weakened.

As is well said in *Samardege v. Hurley-Mason Co.*, 72 Wash. 459: "Counsel for respondent contented himself with showing the fall of the old tier and the consequent injury. No attempt was made to show the cause of the fall, that it was improperly piled, or too high; it being contended that, having shown the height of the pile and that it fell, it was a question for the jury to say whether or not the pile was too high, and further that the doctrine of *res ipsa loquitur* applies, and it was the duty of appellant to absolve itself from negligence. Neither of these contentions can be sustained. The jury could not by their verdict establish a fact until there was some evidence to support it. If, therefore, appellant desired a verdict based upon a finding that the cement was 'piled too high' or 'piled in a negligent manner,' as he had alleged in his complaint, he must furnish the jury some proof of that fact."

It must be remembered that in this case plaintiff was employed for, and it was his duty to, make and keep the place safe as to the piling of this freight and keeping it properly piled. It was his duty to pile it in the first instance, and to repile it if disarranged or displaced. In answer to the question, "Was there anybody that directed the placing of these boxes there?" plaintiff answered: "No, I stored the stuff in these runs myself. I was supposed to know; that is the reason I was placed in the freight house." That it was plaintiff's duty to pile and repile the stacks in question is undisputed.

The risk resulting from the freight becoming disarranged by removal of parts thereof, and the strength of the stack weakened thereby, was one of the risks of this employment. Such a risk was obvious and inherent in the very nature of the business, and the plaintiff is presumed to have contracted with a view to it. To him it was an ever present warning. Under this record he cannot be heard to say that he did not know of the danger he contracted in reference to and received compensation by reason of. To

urge that he did not know, and that it was his employer's duty to warn him, would permit him to deliver less for his wage than that covered by his contract, and require defendant to hire another to warn him, and then another to warn this second employee, and so on *ad infinitum,* which leads to an obvious absurdity. As is well said by the United States supreme court in *Seaboard Airline Ry. v. Horton,* 233 U. S. 492: "Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not." See, also, *O'Connell v. Clark,* 48 N. Y. Supp. 74; *Iams v. Haxel-Atlas Glass Co.,* 251 Pa. St. 439; *Brooks v. Joyce Co.,* 127 Ia. 266; *McGlynn v. Brodie,* 31 Cal. 376; 3 Labatt, Master and Servant, 3135, sec. 1176.

As this case is without evidence of negligence on the part of defendant, its officers, agents, or employees, or of a breach of any regulatory statute enacted for the safety of its employees, the cases of *New York C. & H. R. R. Co. v. Carr,* 238 U. S. 260; *Chesapeake & O. R. Co. v. De Atley,* 241 U. S. 310, and *Chicago, R. I. & P. R. Co. v. Ward,* 252 U. S. 18, cited by plaintiff, do not apply.

If negligence can be said to be reflected by this record, it is that of plaintiff in throwing the axle in question with such force upon or against this Holland stack as to cause such axle to bound back. Plaintiff testified that "when I put it up there it bounded back." Although he uses the verb "put," the very fact that the axle "bounded back" shows that he handled it with unnecessary force, thus failing to exercise that due care which a reasonably prudent man would have exercised under like conditions. It must be remembered from plaintiff's own testimony before quoted that it was not the stack as left by Bean, nor any part thereof, that struck him. Neither was he injured by such stack as it stood after he had replaced all but one of the axles.

His injury occurred when he put the last axle up and it bounded back and struck him. While he says, "I got tangled up in this other freight that had been disarranged by Mr. Bean that I hadn't got stored as it should be," he had his choice as to which he would first restack. He knew the space between the stacks, and selected his own field for action.

The conclusions reached render a discussion of plaintiff's injuries unnecessary. As the record is without evidence to support the judgment, the motion for an instructed verdict should have been sustained.

The judgment of the district court is

REVERSED.

Note—See note in 14 L. R. A. (n. s.) 266; 18 R. C. L. 676; 3 R. C. L. Supp. 841; 4 R. C. L. Supp. 1200; 5 R. C. L. Supp. 998; 39 C. J. secs. 797, 933, 1200.