# THOMAS J. RYAN v. TWIN CITY WHOLESALE GROCER COMPANY AND ANOTHER.
# MINNESOTA TRANSFER RAILWAY COMPANY, APPELLANT.[1]

March 28, 1941.

No. 32,662.

[1]Reported in 297 N. W. 705.

*Weyl & Weyl* and *A. C. Erdall,* for appellant.
*Beldin H. Loftsgaarden,* for respondent.

HOLT, JUSTICE.

Action to recover damages for personal injuries alleged to have been sustained because of the negligence of defendants, the one a wholesale grocery company and the other a railroad company engaged in intra- and interstate commerce transportation. When the evidence was concluded, the court on motion of the grocery company directed a verdict in its favor. A like motion by the railroad company was denied. The verdict was rendered against the latter for $17,500. Its motion for judgment notwithstanding the verdict or a new trial was denied, and it appeals.

There is little, if any, conflict in the evidence. The defendant grocery company does business in a large building fronting University avenue in St. Paul, Minnesota. On the northerly side of the building the defendant railroad operates three parallel tracks where cars are loaded and unloaded. On the other side of these tracks is the Charles street freight depot. Plaintiff, since 1914, was in the employ of the railroad company as a checker and trucker at its freight depot, except for a six-month period. It appears that on May 11, 1929, a written agreement was made between the two defendants whereby the railroad company would

send its checker to the grocery company's building to perform the necessary checking for the freight intended for the railroad, and also to check and help with shipping designed to be moved by trucks, the platform or place for trucks being on the University avenue side of the building. The grocery company agreed to reimburse the railroad for the checker's wages and also for the tax paid under the social security act and its contribution to the pension fund of railway employes. In 1932 plaintiff was directed by the railroad to work as such checker at this grocery company's building. He, however, accepted the place on the agreement that he should remain in the employ of the railroad company and retain all rights as such employe. The foreman in charge of the railroad crew at the Charles street station directed him to keep busy when at the grocery company's building and do whatever its foreman directed him to do. In the grocery company's building was sugar of various kinds piled in sacks. Near the center of the building was piled a certain kind of sugar from which two sacks were needed to fill a shipment, and plaintiff, on November 15, 1938, went to this pile and in the first tier were three sacks one on top of the other; he placed the one on top upon his hand truck, and as he stooped to pick up the second sack the next tier of sacks slid or toppled over upon him, throwing him down and injuring his right knee. It appears that these sacks were of burlap, and each contained ten ten-pound bags of sugar. Each burlap sack when thus filled is about three feet long, 18 inches wide, and from six to ten inches thick. When piled in the building against a post or wall, there is laid a bag along the wall or against the post, then another on top thereof until they are about ten high. Against this first tier (18 inches wide) are piled successive tiers 18 inches wide. If not piled against a wall or post, two bags are laid flat on the floor, then two bags across the first two, and so on up to ten high, and this forms a square column about six feet tall against which tiers may be built up as before stated. When these burlap bags are taken down for shipment, one

tier is taken down to the bottom before any bag is removed from the next tier. There is some testimony that tiers had toppled over or buckled, but whether in piling up or taking down a tier does not appear. Nor was it shown to have happened to plaintiff's knowledge.

Not all assignments of error need be discussed separately. The main contention of appellant is that it was entitled to a directed verdict and should now have judgment notwithstanding the verdict. This is principally based upon the claim that plaintiff was in the joint employ of the railroad and grocery company; that when the bags fell on plaintiff he was rendering a service exclusively for the grocery company; and, being in its service, the injury sustained comes within the workmen's compensation act. Each defendant answered separately by the same attorney, who likewise represented each in the trial, and who successfully moved for a directed verdict in favor of the grocery company. The checking of the freight designed for railroad transportation was of course railroad work; however, the foreman of the railroad company directed plaintiff to do not only the railroad checking in the grocery company's building but also to do whatever the foreman of the grocery company desired done. But that is not all. Plaintiff was not a party to the agreement of May 11, 1929. He was in the employ of the railroad company prior thereto. As such employe he had acquired seniority and other rights. He testified that when the foreman of the railroad company appointed him as checker at the grocery company's building it was agreed that he should be the employe of appellant with all the rights pertaining thereto. There was no testimony to the contrary, and we think on this record that plaintiff must be considered as the employe of appellant alone at the time and place of the injury. The fact that the grocery company agreed with appellant to pay the wages of the checker and save appellant harmless from loss from any claims sustained by it while the checker was engaged in the handling of freight in the grocery company's building cannot af-

fect plaintiff's right of recovery for personal injuries caused by appellant's negligence or breach of duty as the employer or master of plaintiff.

Appellant relies upon cases where a servant is lent by one master to another with the express or implied consent of the servant, or where two railroad companies use one depot at an intersection and the one company by agreement employs the help needed for a certain period to perform not only such service as both require but also the service necessary for each severally, like turning a switch or setting a signal for the line or track operated by the one only. Where the federal employers liability act is the basis for the cause of action, the violator of the act is liable only to its employe injured because of such violation.

Of the many cases cited by appellant, the following may be said to be the most in point for it: Denton v. Yazoo & Mississippi Valley R. Co. 284 U. S. 305, 52 S. Ct. 141, 76 L. ed. 310; Linstead v. Chesapeake & Ohio Ry. Co. 276 U. S. 28, 48 S. Ct. 241, 72 L. ed. 453; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. ed. 480; Stevenson v. Lake Terminal R. Co. (6 Cir.) 42 F. (2d) 357; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Schleappe v. Terminal R. Assn. 339 Mo. 562, 98 S. W. (2d) 616; C. R. I. & P. Ry. Co. v. Norman, 165 Okl. 133, 25 P. (2d) 298; Spodick v. Nash Motors Co. 203 Wis. 211, 232 N. W. 870. In none of these cases was there a specific agreement between the employe and the employer, charged with negligence, as to their status as servant and master, no matter what service or for whom the servant was engaged during his hours of service.

As authorities in this state appellant relies, among others, upon Dahl v. Wunderlich, 194 Minn. 35, 40, 259 N. W. 399, 401; Wicklund v. North Star Timber Co. 205 Minn. 595, 287 N. W. 7. The Dahl case favors plaintiff rather than defendant, in that it quotes with approval the following from a case in point for plaintiff, viz., Murray v. Union Ry. Co. 229 N. Y. 110, 113, 127 N. E. 907:

"But employment, like any other contract, presupposes understanding. The new relation cannot be thrust upon the servant without knowledge or consent. (McNamara v. Leipzig, 227 N. Y. 291, 125 N. E. 244, 8 A. L. R. 480; Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 29 S. Ct. 252, 53 L. ed. 480; Hull v. Philadelphia & Reading Ry. Co. 252 U. S. 475, 40 S. Ct. 358, 64 L. ed. 670.) He must understand that he is submitting himself to the control of a new master. * * * There can be no unwitting transfer from one service to another."

In the instant case there was an express agreement that plaintiff should remain the servant of appellant while at work in the grocery company's building. The controlling facts in the Wicklund case have no similarity to those in the one at bar.

We consider the following decisions of this court as more or less sustaining a recovery by plaintiff: Floody v. C. St. P. M. & O. Ry. Co. 109 Minn. 228, 123 N. W. 815, 134 A. S. R. 771, 18 Ann. Cas. 274; Campbell v. C. N. Ry. Co. 124 Minn. 245, 144 N. W. 772; O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636; Campbell v. Connolly Contracting Co. 179 Minn. 416, 229 N. W. 561; Wegman v. G. N. Ry. Co. 189 Minn. 325, 249 N. W. 422; Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221.

It is true that appellant had had nothing to do with the piling of the bags which fell and caused plaintiff's injuries. That was the work of the grocery company alone. However, the court charged the jury:

"You are instructed that for the purposes of this lawsuit the railway company would be liable for the consequences of any negligent piling of the sacks of sugar by the employes of the grocery company in the same manner as if the piling had been done by the employes of the railway company in the ordinary course of its business."

Error is assigned upon this instruction. The instruction was correct on the theory that plaintiff as appellant's servant was en-

titled to a reasonably safe place wherein to work. The grocery company's building was the one place wherein appellant directed plaintiff to do all his work. Hence its duty was to use ordinary care to see that it was a reasonably safe place for that purpose. The court so instructed:

"It was the duty of the railway company under the law to exercise ordinary care and caution not to put Ryan to work in a place of danger or subject him to hazards or risks unknown to him or not appreciated by him."

In view of the situation, appellant must assume responsibility if the sacks of sugar were piled so negligently as to endanger its servants who were required to work in proximity thereto. Appellant thinks it is absolved from liability for any defective piling of the sacks, by Lundquist v. Duluth St. Ry. Co. 65 Minn. 387, 67 N. W. 1006; De Maries v. Jameson, 98 Minn. 453, 108 N. W. 830; Lindgren v. William Bros Boiler Mfg. Co. 112 Minn. 186, 127 N. W. 626; Holgate v. Chrysler Corp. 279 Mich. 24, 271 N. W. 539. The fellow-servant rule prevented recovery in the Lundquist case. The De Maries decision is more in favor of plaintiff than appellant. There was a recovery in the Lindgren case, and the rule of safe place was discussed but the verdict was sustained on other grounds. In the Holgate case the facts are not at all like those involved in this appeal.

We are of the opinion that the jury could well find that the method of stacking or piling the bags of sugar and the method of removing bags so piled was faulty. A tier of bags of yielding material six feet high and 18 inches wide would be unstable if standing alone. Stability could only come from piling so that the tier would lean somewhat toward the wall, post, or square pillar of bags first built, or by removing no tier clear to the bottom. What is somewhat debatable is the propriety of permitting the jury to use the *res ipsa loquitur* rule on account of the fact that appellant had no control of either piling or removing the sacks of sugar. The trial court regarded Isherwood v. H. L. Jen-

28

kins Lbr. Co. 84 Minn. 423, 87 N. W. 931, as authority for giving the rule. However, the pile of scantlings which there caused the injury was evidently piled by authority of the defendant in that action. There are decisions to the effect that the falling of an object from a pile or toppling over of a pile of goods in a place of business does not give occasion for the application of the *res ipsa loquitur* rule. Davis v. Hines, 154 La. 511, 97 So. 794; David v. Clarksville Cider Co. 186 Mo. App. 13, 171 S. W. 594; Laf Ferry v. C. B. & Q. R. Co. 114 Neb. 219, 206 N. W. 737. In the Davis case it was held that the surrounding circumstances did not show the rule to be applicable. Such was also the view in the Clarksville Cider Company case. And in the Nebraska case it was held that the mere fact that a stack of freight fell when plaintiff threw a wagon axle against it was not sufficient to charge his employer with negligence in its piling. We are of the opinion that informing the jury of the *res ipsa loquitur* rule does not warrant a new trial.

There was no error in refusing to give appellant's first requested instruction that neither the grocery company nor its employes or agents were agents or servants of appellant, for the reason that under its agreement with plaintiff, as already pointed out, it had the duty to use ordinary care to see that plaintiff had a reasonably safe place wherein to work. And we think appellant's second request was adequately covered when the court instructed:

"It is the law that the mere fact that an accident happened and that someone was hurt does not give rise to liability in damages to the person who was hurt."

And in other parts of the charge the burden of proof was properly placed upon plaintiff to prove the negligence alleged against appellant.

The alleged assumption of the risks of the employment was properly submitted, as well as plaintiff's alleged negligence, and that, if his negligence contributed to his injury, the jury should

reduce the verdict by the proportion attributable to such negligence.

The last assignment is "excessive damages appearing to have been given under the influence of passion or prejudice." The verdict is perhaps liberal; but there is nothing in its size or in the record to indicate that it was given under the influence of passion or prejudice. Plaintiff was 48 years old. He had attained seniority rights after many years of service as a railway employe. The testimony shows that the use of the knee is permanently impaired about one-third. But this result unfits him for railroad work, and he has lost all benefits he had acquired as such. Accordingly, plaintiff figures the pecuniary loss suffered in a year is about $1,700, to say nothing about pain and suffering. We think there is no occasion to cite or discuss other cases involving excessive damages. A late case is Ross v. D. M. & I. R. Ry. Co. 207 Minn. 157, 290 N. W. 566, wherein the subject is discussed and prior cases referred to. We cannot say that this verdict, approved by the trial court, is excessive.

The order is affirmed.

