# BUTZ v. UNION PAC. R. CO.

No. 7441.   Decided June 19, 1951.   (232 P. 2d 332.)

See 57 C. J. S., Master and Servant, sec. 534. Federal Employers' Liability Act. 35 Am. Jur., Master and Servant, secs. 395 et seq.; 10 A. L. R. 2d 1279.

*Rawlings, Wallace, Black, Roberts & Black,* Salt Lake City, for appellant.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner,* and *Howard F. Coray,* all of Salt Lake City, for respondent.

CROCKETT, Justice.

The plaintiff was injured while performing his duty as a switchman on the defendant railroad. He was riding the side of a baggage car as it was being pushed on to the baggage tracks of the Denver Union Terminal Company

when he struck his back against a baggage truck which was protruding so close to the tracks that it would not clear him. He brought this action under the Federal Employers' Liability Act, 45 U. S. C. A. § 21 et seq. hereinafter referred to as the F. E. L. A., to recover damages for such injuries. After the presentation of the plaintiff's evidence, the trial court granted a nonsuit, from which ruling the plaintiff has appealed. His contention is that the evidence presented a jury question as to whether defendant was negligent in failing to use reasonable care in providing him a safe place in which to work.

As will hereinafter appear, the difficult question in this case is not whether the plaintiff was furnished a safe place in which to work, but whether defendant railroad should be held responsible for the conditions at the place of plaintiff's injury and the fact that the baggage trucks were misplaced too close to the tracks where plaintiff was required to perform his duties at the time he got hurt.

The Union Pacific and four other railroads use the facilities of the Denver Union Terminal Company, hereinafter for brevity called the Terminal Company, in connection with their railroad operations for the purpose of having the baggage cars loaded and unloaded by that company. Except for the arrangement to perform this service, there is no evidence that the Terminal Company is a subsidiary of or in any way connected with the Union Pacific. All of its facilities, including its tracks, loading platform and baggage trucks, are its own and are operated by its own employees. Its tracks where the injury occurred are called "the outside baggage track"; they proceed westerly in its yard to and along the south side of its baggage loading platform. This is the conventional raised concrete platform alongside of the tracks just an inch or two higher than the top of the rails. The platform is far enough from the track (about 20 inches) to accommodate the overhang of the cars and on the platform about two feet further

from the track, and parallel to it is painted a yellow clearance line. The baggage trucks while not in use are supposed to be parked back of this line, and if so parked there is sufficient clearance for men riding on the steps alongside these baggage cars.

In the performance of his duties on the day of his injuries, the plaintiff and the crew with whom he worked were moving a cut of three baggage cars westward on to the said outside baggage track for loading. His duty as a switchman at the time in question was as "field man" which required him to ride the point or lead car of the cut as it was being pushed on to this baggage track alongside the loading platform referred to; to keep a lookout ahead for obstructions, impaired clearances, and to pass back any necessary signals to the engineer, as the cars were pushed on to this track. Ten baggage trucks were lined up along the platform, the easternmost one being about ten feet from the east end of it. There was a slight curve to the plaintiff's right as he approached the loading platform. This curve is sufficient so that from plaintiff's position as he approached the platform, the truck nearest him (the easternmost truck) obscured his view of the other trucks and their alignment until he was very close (within a few feet—but not exactly determinable) to the trucks. Two of the trucks had been left over the yellow line and thus foul of the clearance.

Plaintiff testified,

"When I got right around the curve to the straight track I was up against these trucks mostly. I didn't have enough time to jump off because there wasn't enough room in between there * * * so I tried to take my arms off to give a signal and just at that time I couldn't give a signal * * * then one of these trucks hit me on the elbow."

This truck in turn moved the next truck even closer to the rail and his back was struck and he was crushed between

this truck and the car. By this time, other members of the crew saw what was happening and signalled a stop, which was made promptly. The plaintiff testified that all other members of the defendant's crew had properly performed their duties.

There is no evidence in the record as to who placed these trucks as they were positioned, nor the length of time they had been there. Usually, where equipment is handled and used exclusively by company employees on its property, there is a permissible inference that such equipment was placed in the position it is found by company employees, *Baltimore & O. R. Co.* v. *Kast,* 6 Cir., 299 F. 419; *Illinois Central Railroad* v. *Skinner's, Adm'x,* 177 Ky. 62, 197 S. W. 552, certiorari denied 246 U. S. 662, 663, 38 S. Ct. 333, 62 L. Ed. 928, and *Clark* v. *Chicago & N. W. Ry. Co.,* 226 Minn. 375, 33 N. W. 2d 484.

The defendant herein apparently does not disagree with the idea that a similar inference could properly be drawn in this case. In shifting blame from themselves for the misplacement of the trucks, they state in their brief,

"The evidence showed beyond any question that the defendant did not leave the trucks in the place where the accident occurred, but on the contrary the trucks were left there by employees of the Denver Union Terminal Company."

From the facts which were shown, that is most likely so. There was sufficient evidence from which the jury could properly be allowed to infer that the trucks were left afoul of the clearance by employees of the Terminal Company. Therefore, for the purpose of this opinion, we assume that the trucks were left afoul of the clearance by employees of the Terminal Company. That completes the factual picture.

It is settled beyond question that it is the duty of the employer to exercise reasonable care to furnish his em-

ployees a reasonably safe place to work and this includes situations where the employer sends his employee on the premises of another to perform his duties. 2 Sherman & Redfield on Negligence, Revised Edition, Sections 193 and 202; *Albert Miller & Co.* v. *Wilkins,* 7 Cir., 209 F. 582; *Porter* v. *Terminal R. Ass'n of St. Louis,* 327 Ill. App. 645, 65 N. E. 2d 31, 33. In the latter case, the court referred to that duty and stated the proposition very clearly:

"* * * and this duty follows the Master even though the servant is sent upon the premises of another to do his work. This duty is non-delegable and affirmative, and must be continuously fulfilled and positively performed", citing supporting authorities.

The defendant makes no contention that the place where plaintiff was injured was a safe place to work. The problem raised by the defendant and the one which gives us concern, as heretofore mentioned, is whether the defendant company is chargeable with responsibility for the condition there existing and for the placement of these trucks so as to impair the clearance and endanger the plaintiff.

There is abundant authority that a defendant employer is charged with responsibility for conditions of danger upon the property of others of which it either has actual knowledge or is charged with constructive knowledge because the hazard is of such a nature and has existed for sufficient time that in the exercise of reasonable care the employer should have discovered it. Numerous of the cases cited and discussed in the briefs are to that effect. In *Schlueter* v. *East St. Louis Connecting Ry. Co.,* 316 Mo. 1266, 296 S. W. 105, 112, involving a defective condition of tracks of another railroad, the court held that if the defendant chose to use another railroad's tracks it was bound to see that they were reasonably safe for use by its employees. In *Terminal R. Ass'n of St. Louis* v. *Fitzjohn,* 8 Cir., 165 F. 2d 473, 477, the plaintiff while riding the side of the car alongside of a ramp upon the property

of the United States Government at its ordinance plant near St. Louis, Missouri, was knocked from the car by certain iron pipes extending from the ramp. It was contended that because the railroad company did not own or control, or have the right of control, over the ramp that it was not responsible. The court supported the judgment for the plaintiff and in doing so used the following language:

"That a master is bound to use reasonable care to provide a safe place in which his servant may work is now too well established to require citation of authority, and it can make no difference, so far as the servant is concerned, *whether the master is using his own property or that of another.*" (Emphasis added.)

and cites supporting authorities. For other cases so holding see *Porter* v. *Terminal R. R. Ass'n,* supra; *Ellis* v. *Union Pacific R. Co.,* 147 Neb. 18, 22 N. W. 2d 305, *Id.,* 329 U. S. 649, 654, 67 S. Ct. 598, 91 L. Ed. 572.

Defendant maintains that there is no basis for either its actual or constructive knowledge of the condition of danger which existed here. The defendant is charged with knowledge of the physical conditions there existing including the tracks, platform, the baggage trucks and the method of their use and operation.

Reviewing plaintiff's situation: his duty required him to ride on the front sill step of the baggage car as it came into the baggage loading platform and his normal position was with his face to the car and his back to the platform. The curve in the track was such that, as plaintiff approached, the first truck blotted out view of the other trucks until he was so near to them that, according to his testimony, he could neither safely jump off nor signal. The clearance line back of which these trucks were supposed to be parked was so close to the edge of the platform it barely allowed room enough for a man to ride past safely, even if the trucks were properly parked; the trucks themselves are on wheels; are designed for facility of move-

ment by hand and can readily be moved by anyone, carelessly, casually or otherwise, and there was no barrier or other control to prevent their running afoul of the clearance. The plaintiff's interest had to be divided between the security of his position on the car, watching the track ahead, passing any necessary signals to the engineer respecting the movement of the train and its proper stopping place, and watching his clearance with the trucks. Under those circumstances, could reasonable minds say that the defendant should have taken other precautions in providing plaintiff with a reasonably safe place to perform his duties? Certain language from the case of *Boston & M. R. R.* v. *Meech,* 1 Cir., 156 F. 2d 109, 111, Certiorari denied, 329 U. S. 763, 67 S. Ct. 124, 91 L. Ed. 658, is pertinent. In that case, the decedent was working on a washstand outside of the defendant's engine house, which consisted of two wooden platforms, apparently oblivious to an engine which ran into and killed him. The case was tried on two counts, the first being negligent operation of the locomotive, and the second being failure to provide a safe place to work. The court said:

"The sufficiency of the evidence to support the verdict on the second count is at least equally clear. The defendant might have painted lines on the platforms * * * or it might * * * have set the platforms of its washstand back from the tracks far enough to prevent locomotives from overhanging them at all.

"From the foregoing, it is clear that although some precautions were taken for the decedent's safety, *further precautions were possible,* and from this it follows, as we read the decisions cited above, that there was an 'evidentiary basis' for submitting the issue of the defendant's causal negligence to the *jury".* (Emphasis added.)

We appreciate that to apply the rule, "further precautions were possible," literally, is not sound because there is no conceivable injury which by hindsight could not have been prevented by some precaution. The test is not whether afterward one may see a way that the injury could have been prevented, but whether the

railroad in the exercise of ordinary prudence and care should have reasonably foreseen the likelihood of injury. Under the circumstances of the instant case, this is a matter upon which reasonable minds could well differ. Whether additional precautions should have been taken by the defendant to provide him with a safe place to work was therefore a question for the jury.

What the employee wants and needs is a reasonably safe place to perform his duties. He is not concerned with and indeed cannot know the technicalities of ownership, rental, lease or reciprocal exchange of facilities of an involved railroad system. For him to have the assurance of safety in some phases of his work and to be exposed to danger at his own risk and responsibility in others would be contrary to reason. It might even be argued that he could better fend for himself on the master's premises where he was acquainted with his surroundings than on premises of third parties with which he is unfamiliar. The employer exercises exclusive choice both as to the place of work and control over safety factors. It is therefore not unreasonable to charge him with the duty of providing a safe place to work.

It is repeatedly argued by the defendant carriers in these cases that the courts are pushing ever closer to the outside periphery of any possible conception of liability based on negligence, and toward if not actually into the field of making the railroads insurers of the employees. The answer to this charge is contained in the case of *Wilkerson* v. *McCarthy*, 336 U. S. 53, 69 S. Ct. 413, 417, 93 L. Ed. 497. The U. S. Supreme Court speaking through Mr. Justice Black says:

"* * * Respondents' argument here is * * * that the Federal Act does not make the railroad an absolute insurer * * *. That proposition is correct * * * the Act imposes liability only for negligent injuries. * * * But the issue of negligence is one for juries to determine * * *.

"* * * This assumption, that railroads are made insurers where the issue of negligence is left to the jury, is inadmissible. It rests on another assumption, this one unarticulated, that juries will invariably decide negligence questions against railroads. This is contrary to fact, as shown * * * by other Federal Employers Liability cases [listing cases supporting this statement].

       \*      \*      \*      \*      \*

" 'We see no reason, so long as the jury system is the law of the land * * * why it should not decide such questions as these as well as others.' "

To the list supporting his statement now can be added the *Wilkerson* case itself because when it was finally tried to a jury in the Third District Court, the jury found in favor of the railroad and against the plaintiff no cause of action.

In his concurring opinion in the *Wilkerson* case, Mr. Justice Douglas, in discussing the purpose of the F. E. L. A. stated:

"The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence. * * *

       \*      \*      \*      \*      \*

"That purpose was not given a friendly reception in the courts."

He amplifies his statement that the courts have not been as cooperative as they might have been in giving effect to the purpose of the act and reports a statistical study to show what has happened in the Supreme Court of the United States in respect to these cases. He points out that of 55 petitions for certiorari in such cases from 1943 to the date of the *Wilkerson* case (January 1949), 20 writs were granted, only one of which was granted to an employer; the other 19 were granted at the instance of employees who had been aggrieved by adverse rulings of lower courts. In 16 of the 19 cases, the lower courts were reversed for depriving an employee of a trial by jury.

This history, together with the language of the adjudicated cases, including the *Wilkerson* case itself, point to one inescapable conclusion: The Supreme Court of the United States says with unequivocal certainty that wherever a railroad employee under F. E. L. A. is ■ injured in the course of duty and there is *any* evidentiary basis upon which reasonable minds could believe that reasonable care might have required additional safety measures which were not taken, and which contributed in whole or in part to cause the injury, the case should be tried to a jury. *Tiller* v. *Atlantic Coast Line R. R. Co.*, 318 U. S. 54, 63 S. Ct. 444, 87 L. Ed. 610; *Lavender* v. *Kurn*, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; and see the case of *Jacob* v. *City of New York*, 315 U. S. 752, 62 S. Ct. 854, 86 L. Ed. 1166, wherein Mr. Justice Murphy speaking for the court stated:

"The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts."

With this sentiment we are in accord.

As suggested by Mr. Justice Wolfe in the case of *Raymond* v. *Union Pacific Railroad Co.*, 113 Utah 26, 191 P. 2d 137, 141:

"It may be regretted that there is no federal workmen's compensation act, similar to those which have been adopted in nearly all of the states * * * but that is a matter to be corrected by the Congress and not by us."

It would unquestionably be more in the interest of social justice and sound economy both for the employer and employee if the burden of loss occasioned by injury and death in employment, which is borne partly by each, should be handled by uniform, adequate and proper awards to the injured employee or his dependents, rather than to leave

it to the uncertain and sometimes capricious determination of courts and juries with the result that some employees and their families receive munificent awards while others go entirely without.

Finally, there is the question of plaintiff's alleged contributory negligence. Although the trial judge did not expressly so state, both counsel in their briefs have proceeded on the assumption that he based his ruling granting a nonsuit also on the ground that the contributory negligence of the plaintiff was the sole proximate cause of his injuries. The F. E. L. A. specifically provides that an employee's contributory negligence shall not bar his recovery but shall only diminish the damages proportional to the contributory negligence. However, if plaintiff were guilty of contributory negligence which was the sole proximate cause of his injury, that would mean that any negligence of the railroad did not proximately cause his injury and therefore preclude any recovery against it. In making this contention, the defendant places particular stress on the fact that the plaintiff had the assigned duty to watch this clearance which was fouled and which caused his injury. In that regard, compare the case of *Coray* v. *Southern Pac. Co.*, 335 U. S. 520, 69 S. Ct. 275, 93 L. Ed. 208, where the decedent in riding a motor car behind a train apparently was ignoring his duty to watch ahead and violating a safety rule of the company not to travel less than 400 feet behind the train. The train stopped abruptly, the motor car ran into the train and he was killed. The Supreme Court of the United States held that a jury question was presented. It is true that the case involved the Safety Appliance Act, 45 U. S. C. A. §§ 1-7, specifically defective brakes on the part of the railroad, but nevertheless if the decedent's negligence had been the sole proximate cause of his death there could have been no recovery.

Compare also *Ryan* v. *Twin City Wholesale Grocery Co.*, 210 Minn. 21, 297 N. W. 705, where, although the plain-

tiff's duty was not specifically to inspect the stacking of the bags, the negligent stacking thereof must have been as apparent to him as to anyone. In practically every case where the danger to trainmen was impaired clearance, the same argument could be made as defendant advances here. Notwithstanding this, in the cases we have examined it appears to have been uniformly held that the question of the employees' contributory negligence in not observing and avoiding the danger of the impaired clearance was a jury question. See *Ellis* v. *Union Pacific,* supra; *Terminal R. Association of St. Louis* v. *Fitzjohn,* supra, and *Kanawha & Michigan Railway Co.* v. *Kerse,* 239 U. S. 576, 36 S. Ct. 174, 60 L. Ed. 448.

Where the evidence is such that the jury may find the defendant was negligent in allowing a condition of danger to exist as we have held here and the plaintiff's duty required him to ride the side of the car into that area with his back to the platform with his attention necessarily divided, the question of his contributory negligence would also be one for the jury to determine.

The cause is remanded with directions to grant plaintiff a trial by jury. Costs to appellant.

WADE and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (dissenting).

I dissent.

I believe the non-suit was properly granted. The plaintiff's testimony fails to show that the defendant was negligent in not furnishing plaintiff with a reasonably safe place to work, and it further appears that plaintiff's own failure in keeping a lookout was the sole proximate cause of his injuries.

The plaintiff is a switchman of 45 years railroad experience and has been employed by the Union Pacific for the last 25 years. During this period, he has performed

switching services in the Denver yards and is familiar with the trackage, the physical layout of the yards, and the type of work being performed on the premises of the Denver Union Terminal. He has guided switching movements over and spotted cars on the "outside" baggage track during the term of his employment and has made as many as six movements over this track on one day.

The movement which resulted in his injuries was the first time that morning the switching crew had moved any equipment over the outside baggage track. Plaintiff's duty on that movement and the reason for his presence on the first car as "field man" was to act as a lookout for the crew. His primary duty was to observe for any and all obstructions or obstacles which might interfere with the movement, including the presence of equipment so close to the track as to constitute a hazard.

The evidence establishes due care on the part of every member of the train crew, save and excepting the plaintiff. Just prior to the collision the cars were being moved at a speed of approximately 5 miles per hour and the equipment was stopped immediately after his impact without signal by plaintiff. It was his conclusion that every member of the train crew carried out his duties in a careful and proper manner and no complaint is made that the crew members were negligent in the manner in which they controlled, moved and stopped the train. The record is devoid of any evidence as to the relationship between the defendant and the Denver Union Terminal Co. and other railroads using the yards. The plaintiff testified that five railroad companies used the baggage track. However, he further testified that employees of the Union Pacific did not handle the trucking equipment. It was assumed that employees of the terminal company were responsible for placing the trucks across the line, although in the pictures some of them carry the name plate of the American Railway Express Company.

It is undisputed that the baggage trucks were not left in the way by any employee of the defendant. Thus the only possible concept by which the defendant might be held negligent is in failing to exercise ordinary care to furnish plaintiff a safe place to work. This action necessarily had to be taken after it gained knowledge that the baggage track and platform were in fact unsafe. There is no evidence that the defendant had actual knowledge that the clearance was impaired on the morning that this accident occurred. The issue is therefore whether the defendant nevertheless had constructive knowledge that the baggage track was an unsafe place. The rule is stated as follows in the American Law Institute Restatement of the Law of Agency paragraph 504:

> "The master's duty as to working conditions does not extend to the condition of premises not in his control nor to the conduct of third persons with whom the servants are to be brought into contact during the course of the work *except that he has a duty to disclose dangerous conditions of which he should know.*" (Italics added.)

In *Kloetzer* v. *Louisville & N. R. Co.,* 341 Ill. App. 478, 95 N. E. 2d 502, 505 the court said:

> "Under the Federal Employers' Liability Act, a railroad company may be responsible to an employee for failing to provide a safe place to work, only if the company knew or in the exercise of reasonable care should have known of the unsafe condition."

*O'Mara* v. *Pennsylvania R. R. Co.,* 6 Cir., 95 F. 2d 762; *Hatton* v. *New York, New Haven & Hartford R. R. Co.,* 1 Cir., 261 F. 667.

In an attempt to analyze this situation I have debated whether or not the practice of the Terminal Company in leaving the trucks on the platform created a situation which had inherent in it, the easy possibility of changing from a safe to an unsafe place to work. Is this baggage platform a place which has a likelihood for ready conversion of the premises into an unsafe place to work, a likelihood which

is constant in this situation and therefore akin to static negligence? This is the only possible ground I can see upon which it could be argued that the defendant did have constructive notice of the likelihood of harm resulting from the inherently hazardous propensities.

I have come to the conclusion that this theory cannot be applied to the facts of this case. The evidence is too meager to support such conjecture. The doctor who testified as to plaintiff's injuries and the plaintiff himself were the only witnesses in the case. The plaintiff simply related that the accident happened. He said nothing about ever having seen baggage trucks in the way before, yet he had visited these premises many times. Had it been shown that trucks were repeatedly left on the runway in such a position as to endanger crewmen, or that for long periods of time they remained afoul the clearance space, then the situation might have been such that we could say a daily or continuous condition of actual or potential hazard or a situation with a ready and easy likelihood or propensity for change from a safe to an unsafe state existed. But where, as here, there is no evidence of any prior encroachments across the safety line, it is erroneous to impute knowledge to the defendant that the station platform and track running alongside it were unsafe.

The sole proximate cause of plaintiff's injuries was the failure to perform the very thing that he was assigned to do. The plaintiff rode the lead car into the baggage platform for the specific purpose of signalling the engineer to stop in the event that objects were in the way. He was in control of the movement of the train. By dropping his hand to his side, he could signal the engineer to stop. Plaintiff was aware of the presence of the trucks on the cement runway as he observed them when the train was approximately one-half mile from the point of the accident. He was looking ahead along the track for possible obstacles and there were no obstructions which cut off his view of

the trucks. There is a slight curve in the track and his claimed reason for not observing that the fourth and fifth trucks were across the clearance line was that the first two trucks obscured the exact location of the next trucks. He claims that when he first observed the impaired clearance he was so close to the equipment he could not give the stop signal.

The truth of the matter is that plaintiff did not signal the engineer to slow the movement of the train, so that he might proceed with caution and observe what he claims was hidden from view. Instead, he hugged the ladder and managed to squeeze by the first two baggage trucks, then he struck the third and fourth ones where he was injured. Plaintiff's negligence in guessing that he would be able to squeeze by was the sole proximate cause of his injuries. It was incumbent upon him to determine whether the train could be backed into the outside baggage track with safety, and this he failed to do. This is not a case of a hidden danger or trap, but is a case of an employee negligently failing to perform a simple routine duty.

In *Willis* v. *Pennsylvania R. Co.*, 2 Cir., 122 F. 2d 248, 249, certiorari denied 314 U. S. 684, 62 S. Ct. 187, 86 L. Ed. 547, plaintiff was standing watch for a repair gang, repairing a switch. No warning was given by plaintiff to the repair crew of the approach of the car which hit him. The court affirmed a directed verdict for the defendant stating,

"Willis' neglect of his personal duty to act as watchman was the sole cause of his own death."

A similar case is *Helton* v. *Thomson*, 311 Ill. App. 354, 36 N. E. 2d 267, where a brakeman directed a train to be backed onto a short dangerous switch track causing the train to overturn and held to be the sole proximate cause of the brakeman's death. I think the plaintiff's action in the principal case falls in the same category. Where an

employee is in charge of the movement of the train and while riding thereon, runs both the train and himself into a parked baggage truck, the sole cause of the accident must be attributed to his failure to signal for a stop.

Before discussing the cases cited by the court, I should make my position clear on two arguments presented in the majority opinion. First, we are not here dealing with the question of whether Congress should, in order to advance social justice, enact a workmen's compensation act. I could heartily recommend the passage of such a law. What we are compelled to do is to adjudicate rights under our present system which requires the employer to pay the damages suffered by an employee only when the employer is negligent. Second, I have no disposition to disagree with the right to trial by jury, but our present procedure contemplates that a judge also participate in the trial. A jury should not be left to wander without rudder or compass and the trial judge should, if plaintiff fails to establish negligence, direct a verdict in favor of the defendant. Mr. Justice Frankfurter, in the case of *Wilkerson* v. *McCarthy*, 336 U. S. 53, 64, 69 S. Ct. 413, 419, 93 L. Ed. 497, 506, said:

"* * * It is an important element of trial by jury which puts upon the judge the exacting duty of determining whether there is solid evidence on which a jury's verdict could be fairly based. When a plaintiff claims that an injury which he has suffered is attributable to a defendant's negligence—want of care in the discharge of a duty which the defendant owed to him—it is the trial judge's function to determine whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff. If there were a bright line dividing negligence from non-negligence, there would be no problem. Only an incompetent or a wilful judge would take a case from the jury when the issue should be left to the jury. But since questions of negligence are questions of degree, often very nice differences of degree, judges of competence and conscience have in the past, and will in the future, disagree whether proof in a case is sufficient to demand submission to the jury. The fact that a third court thinks there was enough to leave the case to the jury does not indicate that the other two courts were unmindful of the jury's function. The easy but timid way out for

a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge."

The cases cited in the majority opinion do not, in my mind, sustain the conclusion reached by the court. They hold an employer must exercise ordinary care to furnish employees a safe place to work, but so do thousands of other cases. But, in practically every case, the facts and circumstances are such that any reasonable person could find ordinary care was not used by the employer to furnish a safe place. I briefly refer to the facts and opinions of the cited cases to illustrate this point.

In *Ellis* v. *Union Pacific R. Co.,* 329 U. S. 649, 67 S. Ct. 598, 600, 91 L. Ed. 572, the employee was pinned between a car and a building. The following excerpt shows why that court concluded there were facts justifying the submission of the issues to a jury.

"From this evidence the jury might have concluded that petitioner had a safe place to work but elected to choose a dangerous one, that any duty of warning was fully discharged by the presence of the sign, and that the engineer had not been negligent in any way. In that view of the case the accident would be an unforseeable, freak event or one caused solely by petitioner's own negligence. On the other hand, it would not have been unreasonable for the triers of fact to have inferred that it was proper and usual procedure to work on the right side of the engine, that the hazard was not readily apparent and was almost in the nature of a trap, that while the sign was placed so as to be readily visible from a train, it was insufficient warning to a man on the ground, and that consequently petitioner was not furnished a safe place to work. And the jury might have thought that the engineer was negligent in failing to perceive the peril in time to avert the accident by a warning or by stopping the engine. Again, both parties might have been found negligent, in which event it would have been the duty of the jury, as the trial judge charged, to render a verdict based upon the damages caused by respondent's negligence diminished by the proportion of negligence attributable to petitioner."

In the case of *Schlueter* v. *East St. Louis Connecting Ry. Co.,* 316 Mo. 1266, 296 S. W. 105, 112, the employee

was injured by the derailment of an engine tender, upon the footboard of which he was riding in the performance of his duties as a switchman. The evidence disclosed that the track and road-bed were old, out of repair and that the rails were different sizes and lengths and were not securely joined. The road-bed at the point of the accident did not belong to the employer, but had been and was being used by it in connection with its railroad business. The court in that case based its decision upon both actual and constructive knowledge of the defective condition. I believe the following paragraph succinctly states the principle announced in that case:

"It seems, however, to be the chief contention of appellant that there is no evidence herein that appellant, or its trainmaster, Boyer, who directed the switching crew in question, had knowledge of the defective condition of the track prior to the derailment. As we have said, there is substantial evidence in the record that the defective condition of track No. 1 had existed for at least a year prior to the derailment, and that several engineers in appellant's employment had observed the condition of the track, and that the engines leaned, or swayed, in passing over the track at or near the point of derailment. Appellant's trainmaster also testified that he was frequently in the Dupo switchyard in the performance of his regular duties and that he had occasion to see the various tracks in the yard prior to the derailment. It seems to us that the jury might reasonably and properly have drawn the inference from such evidence that appellant had actual notice or knowledge of the defective condition of the track in question prior to the time when respondent was directed by the trainmaster to use the same. But, assuming that the evidence is insufficient to show actual knowledge of the defective condition of track No. 1 by the appellant and its trainmaster, yet we think that the evidence is sufficient to establish constructive knowledge of such condition on their part; or, otherwise expressed, we think that the evidence establishes the fact that appellant and its trainmaster should, or could, by the exercise of ordinary care, have known of such defective condition of the track."

In *Terminal R. Ass'n of St. Louis* v. *Fitzjohn*, 8 Cir., 165 F. 2d 473, the court was dealing with the following factual situation: The employer contracted to furnish the switch crew to operate equipment at an ordnance plant

owned by the United States Government. The employee was injured when he came in contact with light standards which were mounted on a concrete ramp. The clearance between these standards and a box car moving on the track was six inches, wholly inadequate to permit a person riding on the side ladder to clear. The condition had existed for some considerable time before the accident. The employees were required to ride the trains night and day and it was during darkness that plaintiff was injured. It is not difficult to arrive at a conclusion that the employer could reasonably foresee injury to its employees. The court merely announced the general rule previously quoted in this opinion.

The Circuit Court of Appeals, First Circuit, in the case of *Boston & M. R. R.* v. *Meech,* 156 F. 2d 109, affirmed the verdict for an employee who was injured while working as a stripper. His work was performed on a structure known as a "washstand." The distance from the inner edges of the platform to the nearest rail was 1.6 feet and the locomotive which struck the injured person overhung both the rails and the edge of the platform. The Court of Appeals held there was sufficient evidence to raise a jury question on two counts. First, that the engine operator was negligent in not observing the employee; and the second, that the location of the platform and its proximity to the track made it an unsafe place to work.

There are cases which deal with temporary hazardous conditions, and I believe they announce the principle we should adopt. I refer to two, namely, *Texarkana & Ft. S. Ry. Co.* v. *La Velle,* Tex. Civ. App., 260 S. W. 248, 251, and *Waller* v. *Northern Pacific Terminal Company of Oregon,* 178 Or. 274, 166 P. 2d 488, certiorari denied 329 U. S. 742, 67 S. Ct. 45, 91 L. Ed. 640.

In the case of *Texarkana & Ft. S. Ry. Co.* v. *La Velle,* supra, the plaintiff, employed as a switchman by defendant railroad, was injured by being pressed between a

cut of cars and a skid pole, which had been left too close to the tracks by employees of a private manufacturing company. The Court of Civil Appeals of Texas reversed a judgment for the plaintiff, saying:

"* * * It is a plain and well-established rule of law that a railway company, like any other, is not liable for injuries caused solely by the act of strangers putting a temporary obstruction on or dangerously near its premises, unless it also is guilty of negligence. [*Missouri, K. & T.*] *Railway Co.* v. *Jones*, 103 Tex. 187, 125 S. W. 309.

      *       *       *       *       *

"Under the circumstances in this case, though, the mere fact alone that on this occasion the skid pole protruded to the extent it did at the time of the injury would not constitute negligence per se, nor be sufficient to impute negligence to appellant. The fact that it protruded at the time of the injury is legally only a circumstance from which negligence may be found, provided under all the circumstances of the case the duty on the part of appellant arose to make inspection to see that it was in that position before the appellee switched the cars to that spur track. In order to legally devolve the duty of inspection in this particular instance to see whether or not the skid pole protruded near the car, there must affirmatively appear some circumstance suggestive to appellant of the probability that the Veneer Works' employees would leave it in a position too near a passing car; for a duty to inspect does not arise where there are no circumstances suggestive of the probability of the occurrence, quite recent in time, as here. For instance, if a like occurrence had not happened before, and the employees of the Veneer Works customarily placed the skid poles at a place free of obstruction to the track, and the track was only used for the single purpose of delivering freight to the one industrial plant, then in such facts the railway company would have no reasonable ground to believe or anticipate that the employees of the Veneer Works would do the act complained of on this exceptional occasion and at this time. The appellant then could reasonably rely on the employees of the Veneer Works removing the skid poles, as they customarily did, by the time they quit work for the day on January 14th."

In *Waller* v. *Northern Pacific Terminal Company of Oregon*, supra, plaintiff was injured when his foot slipped on a stick as he attempted to board a moving train. He was foreman on a switching screw and the evidence showed

that the defendant railroad used the yards for switching operations only, and that the sticks and other trash had been dropped in the yards by others who used the yards. The court held that there was no issue for the jury, and that the railroad had exercised reasonable care in furnishing a safe place to work. The court said:

"Under these circumstances we think it was incumbent upon the plaintiff to show that the specific condition alleged to have caused the plaintiff's fall had existed for a sufficient period of time to charge the defendant with constructive notice thereof, or else to show that the general system of inspection throughout the yards and under all of the circumstances was insufficient and that additional inspection, if reasonably required, would probably have discovered the object. This the plaintiff failed to do." [178 Or. 274, 166 P. 2d 499.]

It may be, as contended by some, that the United States Supreme Court has discarded all previous concepts of the law of negligence, but I am not yet convinced such is the case. Certainly, no decision can be cited which overrules the legal truism that an employee's right of action is bottomed on the negligent acts of his employer. The latest statement made by that court that I can find is contained in *Moore* v. *Chesapeake & Ohio Railway Co.*, 340 U. S. 573, 71 S. Ct. 428, 429. Therein that court stated:

"To recover under the Act, it was incumbent upon petitioner to prove negligence of respondent which caused the fatal accident. *Tennant* v. *Peoria & P. U. R. Co.*, 321 U. S. 29, 32, 64 S. Ct. 409, 411, 88 L. Ed. 520 [523]."

If we start from the foregoing premise, wherein did this defendant fail to use ordinary care to furnish a reasonably safe place to work? There are ordinary risks attendant upon any employment and the mere fact that plaintiff was injured does not meet the burden of proof. He alleges, and this court finds, that by the exercise of ordinary care the defendant could or should have known that the baggage track was an unsafe place for its employees to work. There is nothing structurally wrong with the track

and nothing inherently dangerous in the physical layout of the yard. The hazard which plaintiff complains about was created by the acts of third parties, not by the acts of the defendant. From what facts can it be reasoned the defendant could foresee that vehicles would be left unattended over the clearance line, and, that the one employee who was charged with the duty to stop the equipment, if any hazards were present, would fail in his duty? Undoubtedly, any moving vehicle can be placed near a rail. But, is the mere presence of movable objects afoul of the track on one occasion sufficient to charge an employer with knowledge that he is furnishing an unsafe place to work? Can the condition be momentary, fleeting and temporary and yet the defendant negligent because of his failure to discover and remedy it? Does momentary thoughtlessness on the part of third persons in a terminal yard charge all employers using the yard with furnishing an unsafe place to work? I would believe not. Rather, I would believe that only those conditions which the employer knows, or through the exercise of ordinary care should have discovered, might endanger employees would charge him with negligence. Are we to say that the jury can hold a railroad company liable because a reasonable employer in that industry should anticipate that third parties might be negligent? If we can say this, then I believe this court is casting aside the concept that negligence is the failure to do that which a reasonably prudent and careful person would do under like circumstances and is substituting therefor the principle that an employer must insure the safety of all employees.

What better precaution against injury to members of the crew could the defendant railroad devise than placing the "field man" on the lead car to watch for and timely warn of the presence of obstacles. Certainly it could be said in this case that the trial court was correct in holding that the railroad company as a matter of law exercised reasonable care in respect to the situation here presented.

LATIMER, J., concurs in the opinion of WOLFE, C. J.